613 A.2d 43

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Plaintiff,**

**v.**

**John BRYNER, Sr. et al., Defendants.**

Commonwealth Court of Pennsylvania.

Heard Jan. 13, 1992.

Decided May 20, 1992.

Publication Ordered July 21, 1992.

Beth Liss Shuman, Asst. Counsel, for plaintiff.

Gregory Henry, for defendants.

PALLADINO, Judge.

This opinion addresses a motion for partial summary judgment in an action in equity filed by the Pennsylvania Department of Environmental Resources (DER) to recover response costs pursuant to subsection 507(a) of the Hazardous Sites Cleanup Act (HSCA), Act of October 18, 1988, P.L. 756, 35 P.S. § 6020.507(a).

## I.  PROCEDURAL HISTORY.

DER's amended complaint filed in this court's original jurisdiction alleges that DER incurred response costs when it remediated environmental contamination at a site in Lafayette Township, McKean County, Pennsylvania, where there existed a nitroglycerin manufacturing plant that the parties have referred to as the American Glycerin site. The contamination allegedly stemmed from the dumping of nitroglycerin and acid wastes from 1925 through the time the plant ceased operations, and from the storage of corroded nitric acid drums which started to leak in 1988.

DER's complaint alleges liability for the contamination on the part of: (1) John Bryner, Sr. (Bryner Sr.); (2) John Bryner, Jr. (Bryner Jr.); (3) Pringle Powder Company (Pringle Powder); (4) American Glycerin Company (American Glycerin); and (5) Minard Run Oil Company (Minard Run).

DER's complaint asserts that these five defendants are liable because each is a "responsible person" pursuant to subsection 701(a)(1) of HSCA, 35 P.S. § 6020.701(a)(1),[1] and because section 701 of HSCA, 35 P.S. § 6020.701, renders these "responsible persons" liable for the release of hazardous substances that occurred at the American Glycerin site.[2]

In addition to the pleadings of the parties, the record before this court contains depositions of Bryner Sr. and Bryner Jr., various affidavits, copies of certain documents including deeds and leases, and the administrative record developed by DER during the course of its remediation. *See generally* HSCA section 506, 35 P.S. § 6020.506.

A previous order of this court bifurcated DER's action into two phases, the first to establish the liability, if any, of the five defendants, and the second to determine the amount for which the responsible persons are liable. The current motion of DER is one for partial summary judgment on the issue of the liability of four of the defendants, specifically Bryner Sr. and the three corporate defendants (Defendants).

1. That subsection states, in pertinent part:
   . (a) General Rule.—Except for releases of hazardous substances expressly and specifically approved under a valid Federal or State permit, a person shall be responsible for a release or threatened release of a hazardous substance from a site when any of the following apply:
   (1) The person owns or operates the site:
   (i) when a hazardous substance is placed or comes to be located in or on a site;
   ...; or
   (iii) during the time of the release or threatened release.

2. With respect to one of the Defendants, Minard Run, DER's complaint seeks liability only with respect to the dumping of nitroglycerin and acid wastes, and not with respect to the releases from the drums found leaking in 1988.

## II. SUMMARY JUDGMENT.

In deciding a motion for summary judgment, this court is guided by Rule of Civil Procedure No. 1035(b). That rule provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions, and affidavits establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Also, when a motion for summary judgment is supported by movant's depositions and other items of record, an adverse party may not rest upon averments contained in his pleadings but must produce affidavits or other evidence demonstrating that there exists a genuine issue for trial. Pa.R.C.P. No. 1035(d). "If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.*

Subsection 701(a) of HSCA establishes the following elements to impose liability:

(1) There must have been a release or threatened release,

(2) of a hazardous substance,

(3) from a site, and

(4) there must be a responsible person as stated in subsection 701(a) of HSCA (e.g., a person who "owns or operates" a site as stated in HSCA subsection 701(a)(1)).

There is no dispute in the current case as to the first three of these elements. DER further contends that there are no issues of material fact with respect to whether any of the Defendants are responsible persons, and that the facts indicate the Defendants are responsible persons because each "own[ed] or operate[d]" the site as specified in subsection 701(a)(1) of HSCA. In contrast, Defendants assert that there are issues of material fact that remain with respect to whether the Defendants are responsible persons, or, in the alternative, that if there are no material facts at issue, those facts demonstrate that Defendants are not responsible persons.

This court must examine the record to determine whether there is an issue of material fact regarding whether any of the Defendants owned or operated the American Glycerin site

and, if not, whether DER is entitled to judgment as a matter of law.

### III.  BRYNER SR. AS AN OPERATOR.

The phrase "owner or operator" is defined in pertinent part as, "[a] person who owns or operates or has owned or operated a site, *or otherwise controlled activities at a site.*"  Section 103 of HSCA, 35 P.S. § 6020.103 (emphasis added).  The emphasized portion of this definition is particularly relevant with respect to Bryner Sr.

The deposition testimony of Bryner Sr. indicates that he had the responsibility of "managing" Pringle Powder Company since 1950.  *See* Deposition of John Bryner Sr., May 31, 1991 (Bryner Sr. Deposition), at 6.  Bryner described his first position at Pringle Powder as "Director."  *Id.*  He stated he was in charge of hiring and firing employees, soliciting customers, and purchasing inventory.  *Id.* at 6–7.  With respect to hazardous substances, Bryner Sr. testified that at the time he managed the American Glycerin site, employees that reported to him (*id.* at 15) would dispose of corroded containers of nitroglycerin and acid water into a lagoon located on the American Glycerin site.  *Id.* at 17 and 19.  Bryner Sr. further testified that he was aware of this disposal practice, that prior to his involvement with the American Glycerin site employees must have disposed of acid water in the lagoon (*id.* at 20), and that he never told any of the employees under his control to stop throwing nitroglycerin cans into the lagoon.  *Id.*  Bryner Sr. stated that these disposal practices continued through 1970.  *Id.* at 21.[3]

---

**3.**  The following deposition testimony of Bryner Sr. is illustrative:

Q  After you joined Pringle Powder in 1950, as the Manager, did you ever order the employees to stop discharging the acid water into the lagoon?

A  No.

Q  Who told the employees to throw the corroded cans of nitroglycerin into the lagoon?

A  I don't know that anyone really told them.  If they had a leaky can, why, it needed to be disposed of, and they just threw it into the lagoon.

Q  When did they do that?

Furthermore, the deposition testimony of Bryner Jr. corroborates that of Bryner Sr. In his deposition, Bryner Jr. stated that: (1) Bryner Sr. is the President of Pringle Powder and was interviewed in connection with obtaining a state Department of Health permit; (2) Bryner Sr. makes "most of the decisions about the American Glycerin site"; and (3) that the sole employee at the American Glycerin site during 1960 took orders from Bryner Sr. Deposition of John Bryner Jr., July 30, 1991, at 9–10, 25, and 30, respectively.

■ Significantly, Bryner Sr. does not challenge any of this deposition testimony with contrary affidavits or discovery materials of his own, as is his burden under Rule of Civil Procedure 1035(d).[4]

■ Given the undisputed material facts presented in the above-referenced deposition testimony, this court must now consider whether Bryner Sr. fits within the definition of "owner or operator" as defined in section 103 of HSCA, which would thereby render him liable for response costs. This court holds that he does. It is clear that Bryner Sr.'s responsibilities with respect to activities at the plant, including his control over employees who disposed of hazardous substances generated at the plant, render him one who, in the words of the owner or operator definition, "controlled activities at [the American Glycerin] site." Accordingly, Bryner Sr. is liable to

A Well, they's been doing it since the place was first built, as far as I know of.

Q And did you ever tell them to stop throwing the leaking cans of nitroglycerin into the lagoon?

A No.

Bryner Sr. Deposition, at 20.

4. Defendants, all of whom are implicated under the testimony of Bryner Sr., argue that the deposition testimony of Bryner Sr. cannot support DER's motion because, argue Defendants, the finder of fact could reject that testimony as not credible. Defendants cite *Borough of Nanty–Glo v. American Surety Company of New York*, 309 Pa. 236, 163 A. 523 (1932). We reject this argument on the ground that the *Nanty–Glo* rule does not apply where, as here, the deposition testimony offered in support of a summary judgment constitutes an adverse admission of a non-moving party. *Post v. Dodd*, 116 Pa.Commonwealth Ct. 114, 541 A.2d 56 (1988).

DER as a responsible person under subsection 701(a)(1) of HSCA.

## IV. MINARD RUN AS AN OWNER.

This court must next consider an argument of defendant Minard Run. It is undisputed that until 1953, Minard Run owned the real property at the American Glycerin site and leased it to Pringle Powder Company. In 1953, Minard Run conveyed the real property to Pringle Powder. *See* Deed dated February 23, 1953, and Lease, Exhibit C, DER Motion for Partial Summary Judgment.

Nevertheless, it is argued that Minard Run cannot presently be deemed an owner under HSCA because there is a question of material fact with respect to whether hazardous substances were released on the American Glycerin site when Minard Run owned it. Minard Run argues that Bryner Sr.'s deposition testimony is equivocal with respect to whether hazardous substances were released prior to February 23, 1953. Minard Run cites page 16 of Bryner Sr.'s deposition for the proposition that questions asked of Bryner Sr. expressly related to the time period during "the 1950's." Because, argues Minard Run, it is uncertain whether the phrase "the 1950's" encompasses the period prior to February 23, 1953, and because Minard Run is entitled to the favorable inferences of record, there remains an issue of fact with respect to whether Minard Run was an owner during the time of a release of hazardous substances.

■ Other unrefuted deposition testimony, however, indicates that the ambiguity Minard Run cites does not exist. *See, e.g.,* n. 3, *supra* (question to Bryner Sr. relating to after 1950, with answer implicitly indicating releases occurred at that time). Additionally, subsection 701(a)(1)(iii) of HSCA permits the imposition of liability if a party owned the site when a hazardous substance was placed on the site or comes to be located in or on the site, a condition which the unrefuted deposition testimony indicates was the case with respect to the

American Glycerin Plant during Minard Run's ownership thereof. *See, e.g.,* n.3, *supra.*

Accordingly, Minard Run's argument must be rejected. We hold that there is no genuine issue of material fact with respect to whether Minard Run owned the American Glycerin site when the releases of hazardous substances occurred (or, at the very least, when hazardous substances were placed on that site). Minard Run is therefore liable under subsection 701(a)(1) of HSCA as an owner of the American Glycerin site.

However, because the record indicates Minard Run owned the American Glycerin site only until 1953, Minard Run is not liable for the release of hazardous substances from the leaky drums that DER discovered in 1988. (Indeed, DER has not even pleaded that Minard Run is liable for that release. *See* Amended Complaint of DER, at ¶¶ 38–49.)

## V. PRINGLE POWDER AND AMERICAN GLYCERIN AS RESPONSIBLE PERSONS.

Except with respect to the *Nanty–Glo* argument already rejected as not applicable, *see supra* n. 4, no argument has been presented on behalf of either Pringle Powder or American Glycerin that either of those corporations does not, under the current record, fulfill the requirements of subsection 701(a). Accordingly, those corporations are also responsible persons as defined in that subsection.

## VI. DEFENSES.

Defendants in this case have asserted two defenses to liability that, in their view, preclude the entry of summary judgment in favor of DER.

First, Defendants argue that the releases at the American Glycerin site were done under a valid State or Federal permit, thus rendering Defendants not liable under the first clause of subsection 701(a) of HSCA. As evidence of a permit, Defendants cite: (1) an affidavit of Bryner Sr. that states that to the best of his knowledge, all releases at the American Glycerin site were done under some permit, and (2) an Industrial 1966

Waste Discharge Permit issued by the Pennsylvania Department of Health that appears in the administrative record compiled by DER during the course of its response action at the American Glycerin site.

However, this evidence is inadequate to raise a genuine issue of material fact with respect to whether the releases from the American Glycerin site were permitted. The affidavit of Bryner Sr. recites his conclusions, but does not indicate which permits the American Glycerin site operated under. More importantly, Bryner has not produced or submitted into the record any of these alleged permits.

With respect to the permit of record, this court finds that a permit issued in 1966 does not raise an issue of fact with respect to releases that the record indicates occurred from at least 1950. Moreover, regarding the 1988 release from the leaky nitric acid drums, this court finds that the cited permit does not, in the words of subsection 701(a), "expressly and specifically approve[ ]" of that release. Indeed, the cited permit relates not to drums at all, but rather to the construction of a "waste treatment facility." *See* Administrative Record, Item 2, p. 1. Accordingly, we conclude that there is no genuine issue of material fact with respect to the permitting issue, and that Defendants releases were not done under a permit as provided by subsection 701(a).

Defendants' second defense is with respect to the drums of nitric acid that were found leaking in 1988. Defendants argue that because it was allegedly the U.S. Environmental Protection Agency (EPA) that overpacked these drums, Defendants are not liable for the release from these drums by virtue of subsection 703(a)(3) of HSCA, 35 P.S. § 6020.703(a)(3). That subsection states that a responsible person is not liable if a release was caused *solely* by a third party, and if the responsible person (here, Defendants) exercised due care with respect to the hazardous substances.

The administrative record compiled by DER clearly demonstrates that there is no issue of material fact regarding whether Defendants contributed to causing the release of

hazardous substances from the nitric acid drums at the American Glycerin site. That record demonstrates that EPA was called to the American Glycerin site in 1984 after a nitric acid drum ruptured and "an orange cloud" emanated from the site. It was then that EPA discovered "rusty drums" and during which the nitric acid drums were transferred to other drums, which ultimately leaked. *See* Administrative Record, Item 7. Defendants have presented no evidence of record to refute these facts.[5]

Accordingly, this court concludes that there is no genuine issue of material fact regarding whether EPA was solely responsible for the the release from those drums. The third-party defense advanced by Defendants is inapplicable on the facts of this case.

Having concluded that there is no genuine issue of material fact with respect to any issue presented by DER or Defendants, and having found DER entitled to judgment as a matter of law, this court holds that Bryner Sr. and the three corporate defendants are all liable for the releases of hazardous substances that occurred at the American Glycerin site.

## ORDER

AND NOW, May 20, 1992, in accordance with the foregoing opinion, it is hereby ordered and decreed that the motion of the Department of Environmental Resources for partial summary judgment on the issue of liability for release of hazardous substances at the American Glycerin site, Lafayette Township, McKean County, against defendants John Bryner, Sr., Minard Run Oil Company, Pringle Powder Company, and American Glycerin Company, is granted.

---

5. This court notes that section 508 of HSCA, 35 P.S. § 6020.508, imposes limits on "challenging ... the administrative record under section 506...." Nevertheless, Defendants have not at any time during the course of the case challenged the administrative record compiled by DER.