# Chapman v. Schutz

*Dominic D. Salvatori,* for plaintiff.
*Niru Canciello,* for defendant.

VARDARO, *J.,* October 9, 1996—This case arises from an automobile accident. Plaintiff alleges that on November 23, 1994, she was driving her vehicle in a prudent manner when the defendant's vehicle collided with hers. Plaintiff owned the car she was driving, however, prior to the accident, plaintiff had signed a waiver, at the request of her insurance company, that excluded her from liability, property, uninsured and underinsured coverage because her driving license had been suspended. Thus, plaintiff's automobile insurance covered

her only for first party benefits if she was driving the vehicle.

On May 24, 1995, the plaintiff, seeking to recover both economic and noneconomic losses caused by such accident, filed a complaint against the defendant alleging negligence. On July 10, 1995, the defendant filed an answer and new matter which denied the material allegations of plaintiff's complaint. Defendant, on June 12, 1996, moved for summary judgment on the plaintiff's claim for noneconomic damages.

Defendant argues that the plaintiff is subject to the limited tort automobile insurance option as a matter of law, and pursuant to that option, the plaintiff cannot maintain a claim for noneconomic damages arising from an automobile collision. Defendant further argues that plaintiff does not fall into any of the exceptions that allow limited tort drivers to recover noneconomic damages. It is this motion that is now before this court.

## DISCUSSION

Effective July 1, 1996, there is a new Rule of Civil Procedure governing summary judgments.

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential

to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. no. 1035.2.

As authorized by 1 Pa.C.S. §1939,[1] we look to the official comments in interpreting a rule. The explanatory note to Pa.R.C.P. no. 1035.2 reads as follows:

"The essence of the revision set forth in new Rule 1035.2 is that the motion for summary judgment encompasses two concepts: (1) the absence of a dispute as to any material fact and (2) the absence of evidence sufficient to permit a jury to find a fact essential to the cause of action defense. The former rule was unclear as to whether it encompassed the type of motion which is based upon a record which is insufficient to sustain a prima facie case. New Rule 1035.2(2) is explicit in authorizing such a motion."

Pursuant to Pa.R.C.P. no. 1035.1 et seq., summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. nos. 1035.1, 1035.2. "[T]he party who brought the motion has the burden of proving that no genuine issue of fact exists. All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judgment." *Penn Cen-*

---

1. "The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report." 1 Pa.C.S. §1939.

*ter House Inc. v. Hoffman,* 520 Pa. 171, 176, 553 A.2d 900, 903 (1989). In making this determination, the court must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. *Dorohovich v. West American Insurance Co.,* 403 Pa. Super. 412, 589 A.2d 252 (1991). The court must accept as true all well-pleaded facts in the opposing party's pleadings, as well as any admissions of record. *O'Neill v. Checker Motors Corp.,* 389 Pa. Super. 430, 567 A.2d 680 (1989). The entry of summary judgment is appropriate only in the clearest of cases. *Reeves v. Morelli-Hoskins Ford Inc.,* 415 Pa. Super. 431, 433, 609 A.2d 828, 829 (1992); *Burnside v. Abbott Laboratories,* 351 Pa. Super. 264, 505 A.2d 973 (1985).[2]

### Financial Responsibility

Under the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., drivers are bifurcated into two classes, those with limited tort rights and those with full tort rights. Drivers with limited tort rights are restricted to recovering economic damages, such as lost wages and medical expenses. 75 Pa.C.S. §1705(d). Drivers with full tort rights may recover both economic and noneconomic damages, such as pain and suffering and other nonmonetary detriment. 75 Pa.C.S. §1705(c).

Generally, a driver falls under the limited tort provision by, in his insurance contract, voluntarily selecting that option in exchange for a discounted premium. How-

2. We find substantial similarity between Rule 1035.2(1) and prior Rule 1035. Thus, case law providing summary judgment standards under prior Rule 1035 is equally applicable to Rule 1035.2(1) summary judgments.

ever, drivers may also be subject to the limited tort provision involuntarily. Under 75 Pa.C.S. §1705(a)(5), owners of currently registered private passenger motor vehicles who do not meet the definition of "financial responsibility," as contained in 75 Pa.C.S. §1702, are deemed to have selected the limited tort option as a matter of law. Defendant alleges that because the plaintiff was, at the time of the accident, an excluded driver under her own policy, she is not financially responsible within the meaning of the MVFRL and thus has only limited tort rights as a matter of law. Defendant concludes that plaintiff is therefore precluded from recovering noneconomic damages unless she can prove one of the enumerated exceptions contained in 75 Pa.C.S. §1705(d). Defendant contends that the plaintiff is not within any such exception.

Plaintiff counters that she has full tort rights under her insurance contract. Plaintiff maintains that in signing the exclusion agreement, plaintiff only agreed that there would be no bodily injury, property damage, underinsured or uninsured coverage for any loss in which she was the *at-fault* driver of the insured vehicle. Plaintiff avers that she was not at fault in her accident with the defendant and therefore her full tort coverage is in effect.

The plaintiff's named driver exclusion, effective April 1, 1994, reads in pertinent part:

"We will not pay for any claim arising from an accident, occurrence, or loss under Part I, II, III, or IV of your policy if such accident, occurrence, or loss occurs while your insured car or any other car to which the terms of this policy may apply is being driven by any excluded person, either with or without your permission."

Plaintiff was the only excluded driver on such endorsement. Part I of the Progressive insurance policy is the only part of the policy that extends coverage for liability to others. Such section provides liability coverage for damages, "for which an insured person is legally liable because of bodily injury or property damage resulting from the ownership, maintenance or use, including loading and unloading, of a car or utility trailer." [3]

From the foregoing, it becomes apparent that our initial determination must be whether the plaintiff is financially responsible within the meaning of the MVFRL. Finding no case directly on topic, we resolve this issue of first impression by examining the relevant sections.

"An owner of a currently registered private passenger motor vehicle who does not have financial responsibility shall be deemed to have chosen the limited tort alternative." 75 Pa.C.S. §1705(a)(5).

" 'Financial responsibility.' The *ability* to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident. The financial responsibility shall be in a form acceptable to the Department of Transportation." 75 Pa.C.S. §1702. (emphasis supplied)

---

3. Part II provides collision insurance to the insured's vehicle, Part III provides uninsured motorist coverage and Part IV provides underinsured motorist coverage.

The above definition of "financial responsibility" is, on its face, free from any concept of fault, nor has case law added one. In *DeMichele v. Erie Insurance Exchange,* 385 Pa. Super. 634, 561 A.2d 1271 (1989), the plaintiff was the estate of a man killed in an automobile accident who was a passenger in a car other than his own. The decedent's estate thereafter sought to recover first party benefits from the father's insurance company which, arguably, covered the decedent because he resided with his father. The defendant insurance company claimed that, because the decedent failed to insure his own registered automobile, the decedent was not "financially responsible" and was thus ineligible for first party benefits. On appeal, the Superior Court found the decedent to be not financially responsible, per 75 Pa.C.S. §1702, even though the decedent was not operating his uninsured vehicle when he suffered his fatal injury. Nowhere in *DeMichele* did the Superior Court introduce the concept of fault into their discussion of financial responsibility.

Thus, we read section 1702 to impose a hypothetical test. It is a registered car owner's *ability* to respond to damages for liability, if hypothetically he should be found liable, that determines whether "financial responsibility" is present. Thus, whether plaintiff is at fault in the instant case is immaterial in judging her financial responsibility.

Next, the plaintiff contends that placing her in the limited tort category would penalize her for a wrong not recognized by the MVFRL. In support, plaintiff cites *Henrich v. Harleysville Insurance Cos.,* 533 Pa. 181, 620 A.2d 1122 (1993), for the proposition that in interpreting the MVFRL, penalties are to be strictly construed. Therein, the Pennsylvania Supreme Court held that an injured passenger may recover uninsured

motorist benefits even if that passenger was the owner of an uninsured registered motor vehicle. Our Supreme Court made its ruling on two grounds, one statutory and one policy. First, the Supreme Court held that "nowhere in the MVFRL does it state that owners of uninsured, but registered motor vehicles may not recover *uninsured motorist benefits,* as opposed to first party benefits." *Id.* at 184, 620 A.2d at 1123. (emphasis in original) Second, the Supreme Court opined that to exclude an injured *passenger* from uninsured motorist benefits would not contribute to the MVFRL's policy of encouraging people to insure their vehicles.

We distinguish the case sub judice from both grounds of *Henrich.* First, we find our statutory construction to be sound. The MVFRL clearly excludes from full tort rights all those who do not have financial responsibility wherein financial responsibility is the *ability* to respond to damages for liability. We add nothing to the plain language of the statute.

Second, we believe the deterrent purposes of the MVFRL are served by excluding the plaintiff from full tort coverage. The MVFRL's purpose is "to encourage all owners of registered vehicles to contribute to the burden of insurance before they can reap the benefits." *DeMichele, supra* at 636, 561 A.2d at 1272. Plaintiff has only partially assumed the burden of insurance. While plaintiff has successfully insured herself for first party benefits, she has no recognized ability to compensate any third party she might injure. Thus, plaintiff has, in essence, protected herself but not others. To allow the plaintiff to now reap the benefits of full tort coverage, without her having paid a dime to protect others from any negligent acts that she might commit, would be to invite irresponsibility. Also, the plaintiff

herein is a driver, unlike the plaintiff in *Henrich* who was a passenger, and is arguably more culpable.

Lastly, plaintiff argues that to hold her not financially responsible, and thus potentially exclude her from recovering noneconomic damages, would leave drivers subject to a driver exclusion clause with no incentive to maintain or buy insurance. However, *DeMichele* prohibits any owner of a registered uninsured vehicle from collecting first party benefits, thus, drivers are encouraged to insure their vehicles in order to protect their access to first party benefits.

### Serious Injury

A plaintiff subject to the limited tort option may, however, still seek nonmonetary damages if any of the exceptions contained in 75 Pa.C.S. §1705(d) apply. We find the only exception in that section applicable to the instant case is the serious injury exception.[4] Under such exception, a limited tort driver may recover noneconomic damages if her injury is a "serious injury." That is, her injury entailed death, serious impairment of body function or permanent serious disfigurement. 75 Pa.C.S. §1702. Plaintiff has not claimed that she has suffered a permanent serious disfigurement.

In a recent decision, the Pennsylvania Superior Court held that it is the function of the judge to make the

---

4. 75 Pa.C.S. §1705(d) states in part:

"(d) Limited tort alternative.—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, . . . ."

initial determination whether a plaintiff has suffered a "serious injury" where there is no dispute of fact. *Dodson v. Elvey,* 445 Pa. Super. 479, 665 A.2d 1223 (1995). Thus, having decided that the plaintiff's rights are circumscribed by the MVFRL's limited tort option as a matter of law, we must now determine whether the plaintiff falls within the "serious injury" exception.

In *Dodson,* the court affirmed the grant of summary judgment in favor of defendant-appellee on the basis that the plaintiff-appellant had elected the limited tort option and had not established that he had sustained a "serious injury." The court held that in the context of summary judgment, the court must determine initially: "(1) whether the plaintiff as moving party has established that he or she has suffered serious impairment of a body function;

"(2) whether the defense as moving party has established that plaintiff has not suffered serious impairment of a body function; or

"(3) whether there remains a genuine issue of material fact for the jury to decide." *Id.* at 494, 665 A.2d at 1231, citing *Curran v. Children's Service Center Inc.,* 396 Pa. Super. 29, 578 A.2d 8 (1990), *alloc. denied,* 526 Pa. 648, 585 A.2d 468 (1991).

The court emphasized that "in deciding whether a material issue of fact exists for the jury, the judge should not focus on the injury but should focus on the nature and extent of plaintiff's impairment as a consequence of the injury." *Id.* Further, the court held that "a plaintiff may not create a triable issue of fact with subjective evidence only . . . [but] must show a material dispute of fact by objective medical evidence." *Id.* at 497-98, 665 A.2d at 1233. "Oral testimony alone (unless it is an admission of a party opponent) is never sufficient to support a motion for summary judgment, as credibility

is at issue." *Id.* at 498, 665 A.2d at 1233, citing *Penn Center House Inc. v. Hoffman, supra; Nanty-Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932).

The Superior Court instructed that if a court determines that "the evidence conclusively establishes that the plaintiff has suffered 'serious impairment of body function,' then the jury may decide only the issues of liability and damages." *Dodson, supra* at 497, 665 A.2d at 1232. However, if the court determines that the plaintiff has not established "serious impairment of body function," the case should be dismissed. *Id.*

While the court noted that "serious impairment of body function" is not defined, the court cited with approval the definition adopted by the Michigan courts in *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986), stating that the "serious impairment of body function" threshold contains two inquiries:

"(a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

"(b) Was the impairment of body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment . . . . In determining whether the impairment was serious, several factors should be considered . . . ." *Dodson, supra* at 499, 665 A.2d at 1233, citing *DiFranco,* 427 Mich. at 39, 398 N.W.2d at 901 (see also, *Murray v. McCann,* 442 Pa. Super. 30, 36, 658 A.2d 404, 407 (1995)).

This test requires consideration of four factors to determine whether a plaintiff has suffered a "serious impairment of bodily function":

"(1) the extent of the impairment,

"(2) the particular body function impaired,

"(3) the length of time the impairment lasted, and

"(4) the treatment required to correct the impairment." *Id.*

Further, the Superior Court carefully defined the focus in determining whether an injury or impairment is serious. "An impairment involves more than the injury itself. The consequences of the injury must involve a serious impact for an extended period of time on a plaintiff's life. . . . It must interfere substantially with the plaintiff's normal activities and not impose only a mild or slight limitation." *Id.* at 499, 665 A.2d at 1234. (citations omitted)

Factually, the appellant in *Dodson* was injured in an accident which occurred on January 11, 1992. At the emergency room, x-rays were taken and appellant was given a sling for his right arm. Appellant stated that he immediately felt pain in his lower back, the back of his head, his right arm and shoulder and developed a frontal headache secondary to a mid-forehead contusion. Appellant testified that he could not use his arm throughout the month following the accident and did not return to his job as a warehouseman for about four months. On May 21, 1992, appellant was released to work with full duties and without restriction. He later developed decreased strength and was instructed to continue with home exercises. It was determined during an August 1992 visit to the doctor, that appellant had full range of motion with some stiffness at the extremes of internal and external rotation, with slight decrease in right upper extremity strength. Appellant's doctor felt that appellant would "suffer long term with some mild to moderate right upper extremity weakness"

and more likely than not would develop arthritis in the future.

Appellant used no treatment or prescription medication for the pain other than self-treatment with Tylenol. Appellant also testified that he could not bowl, play softball or lift weights as he did before the accident. However, he identified no restrictions imposed by his doctors on these activities. The trial court, in granting summary judgment, held that "[a]t best, this is a case of a soft tissue injury with residual pain. We do not find an impairment of function. Plaintiff has full range of motion." *Id.* at 489, 665 A.2d at 1228.

The Superior Court affirmed the trial court's finding that the evidence showed that the injury demonstrated only slight limitations in arm function. Although the court recognized "that subjective complaints of pain may result in a serious impairment of body function, [they concluded that] this is not such a case." *Id.* at 501, 665 A.2d at 1235. The court concluded that the record showed "no serious interference with the appellant's daily life, and that there is no triable issue of fact that appellant suffered a minor rather than a serious injury." *Id.*

The court, in rejecting appellant's argument that his constitutional right to a jury trial was violated, held that appellant had affirmatively agreed, in exchange for a lower premium rate, that any potential tort action for noneconomic damages is precluded where his injuries are not "serious." *Id.* at 490, 665 A.2d at 1230. The court also rejected appellant's argument that the court should adopt the procedures used by Michigan state courts in determining whether a plaintiff has sustained a threshold-level injury. *Id.* at 493, 665 A.2d at 1231. In the Michigan case, *DiFranco v. Pickard,* 427 Mich. 32, 398 N.W.2d 896 (1986), the Michigan

Supreme Court stated that the question of whether the plaintiff suffered a serious impairment of bodily function must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the answer, even where there is not a material dispute about the nature and extent of the plaintiff's injuries.

The Pennsylvania Superior Court refused to adopt the procedural standard utilized in *DiFranco,* distinguishing Michigan's tort law on the basis that Michigan's limited tort law is a comprehensive, mandatory system imposed upon all drivers. The court reasoned that:

"To permit all cases where plaintiffs claim serious impairment of body function routinely to go to the jury would not reign in cost but would prove as expensive as an unrestricted right to sue. To allow nonserious injury cases to proceed through trial to a jury would frustrate the legislature's goal of reducing litigation and the cost of insurance." *Dodson, supra* at 494, 665 A.2d at 1231.

The Superior Court therefore affirmed the trial court's grant of summary judgment, precluding plaintiff from seeking noneconomic damages where the plaintiff had elected the limited tort option and where the court determined that plaintiff had not sustained a "serious bodily injury."

Prior to *Dodson,* the Pennsylvania Superior Court, in *Murray v. McCann,* 442 Pa. Super. 30, 658 A.2d 404 (1995), determined that a trial court had properly concluded that a plaintiff had not suffered a "serious bodily impairment." In *Murray,* minor-appellant instituted suit seeking noneconomic damages for injuries she received in an accident on December 13, 1990. Appellant's mother had chosen a limited tort option under her policy of insurance. The parties stipulated

that the judge, as trier of fact, was to determine whether appellant suffered "serious impairment of bodily function" which would allow her to recover for noneconomic damages.

In *Murray,* appellant was taken to a hospital and after a few hours, upon finding all x-rays were normal and there was no bleeding, was released. Appellant was bedridden for approximately two weeks, returned to work and then underwent physical therapy for four months. During this four-month period, appellant experienced pain in her legs, back, neck and right hip. She later consulted an orthopedic surgeon for pain in April of 1991. Appellant's neck and back pain continued up until the time of appeal. Appellant testified that her neck and shoulder were stiff in the morning and also became stiff at work. She also testified that lifting anything heavy, running the vacuum cleaner and getting groceries were painful activities. The court noted that with only two exceptions, miniature golf and roller skating, appellant engaged in all activities which she enjoyed prior to the accident, although she still suffered from stiffness and pain. Also, appellant had taken no medication other than ibuprofen for her pain.

The appellant's medical expert testified that appellant would not be able to lead a normal life without a measure of pain and the pain during her normal activities would be chronic. The defendant's medical expert testified that he conducted tests that revealed appellant's function, motion, strength, sensation and reflex were normal.

Based on this evidence, the trial court limited appellant's recovery to economic damages, concluding that appellant had not suffered "serious bodily impairment." In reaching this decision, the trial court considered the factors set forth in *DiFranco v. Pickard, supra,* which include the extent of the impairment, the

particular body function impaired, the length of time the impairment lasted, and the treatment required to correct the impairment.

Upon review, the Superior Court held that the trial court was inaccurate in stating that an injury must be objectively manifested and that subjective pain could never result in "serious bodily impairment." *Murray, supra* at 37, 658 A.2d at 407. However, despite the trial court's incorrect statements, the Superior Court found that the trial court based its opinion on consideration of the proper factors in determining that the appellant had not suffered a "serious impairment of bodily function." *Id.*

In the case sub judice, plaintiff attaches voluminous medical records as exhibits to her brief in opposition to the defendant's motion. However, these records are not properly before this court and may not be considered in judging the motion at issue. Pa.R.C.P. no. 1035.1 reads as follows:

"As used in Rule 1035.1 et seq., 'record' includes any

"(1) pleadings,

"(2) depositions, answers to interrogatories, admissions and affidavits, and

"(3) reports signed by an expert witness that would, if filed, comply with Rule 4003.5(a)(1), whether or not the reports have been produced in response to interrogatories."

The official comment to Pa.R.C.P. no. 1035.2 makes clear that a motion for summary judgment must be judged on the information contained in the "record." We believe that such comment used that word within the definition provided by Rule 1035.1. Thus, because the medical reports submitted by the plaintiff are not

within the purview of Rule 1035.1, this court may not consider them.[5]

Rule 1035.1 is not the only limitation on what we may consider. In *Nanty-Glo Borough v. American Surety Co., supra,* our Commonwealth's highest court held that summary judgment cannot be granted based upon evidence which depends solely on oral testimony. In the context of such rule, "oral testimony" includes both testimonial affidavits and deposition testimony. *Porterfield v. Trustees of the Hospital of the University of Pennsylvania,* 441 Pa. Super. 529, 657 A.2d 1293 (1995). However, the *Nanty-Glo* rule does not apply where the deposition testimony offered by the moving party constitutes an admission by a non-moving party. *Commonwealth, Dept. of Environmental Resources v. Bryner,* 149 Pa. Commw. 59, 65 n.4, 613 A.2d 43, 46 n.4 (1992).

As a result of the foregoing, we are constrained to consider only the medical examination of the plaintiff by Dr. Hirsh Wachs,[6] the November 7, 1995 deposition of the plaintiff and the pleadings. Viewing the record

_____

5. Specifically, the plaintiff's medical reports are not admissible because they lack supporting affidavits as required by Rule 1035.4. Rule 1035.4 states, in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein." The official note to this new rule states: "New Rule 1035.4 governing affidavits is derived verbatim from the first three sentences of prior Rule 1035(d)." In *Wheeler v. Johns-Manville Corp.,* 342 Pa. Super. 473, 493 A.2d 120 (1985), the Superior Court held that medical records that were unsworn, and thus not complying with prior Rule 1035(d), "may not be considered part of the record on summary judgment." *Id.* at 477, 493 A.2d at 122.

6. The medical report by Dr. Wachs is verified as required by Pa.R.C.P. no. 1035.4 and defined in Pa.R.C.P. no. 76.

that is properly before us, we first make findings of fact on the plaintiff's cause of action. Second, we then consider those facts in light of the four factors set forth in *Dodson* to determine whether these findings represent a serious impairment.

On November 23, 1994, the plaintiff was traveling south on Route 102 when her vehicle and the vehicle of the defendant collided (Chapman deposition p. 13), with the passenger's side of the plaintiff's car contacting the driver's side of the defendant's car. (Chapman deposition p. 17.) The plaintiff was taken from the scene to the emergency room of the Meadville Medical Center for treatment. (Chapman deposition p. 22.) After about an hour (Chapman deposition p. 30), plaintiff became impatient with the care rendered to her and left the hospital without receiving treatment. (Chapman deposition p. 29.) After waking the next morning unable to turn her neck, she went back to the Meadville Medical Center emergency room (Chapman deposition p. 29) and was treated with x-rays, muscle relaxants and a cervical collar. (Chapman deposition p. 31.) Thereafter, she received care at an unspecified headache center in Meadville. (Chapman deposition p. 29.)

First, *Dodson* has us examine the extent of the impairment and the body function impaired. The plaintiff cataloged her injuries as follows: muscle spasms (Chapman deposition p. 29), cervical pain (Chapman deposition p. 32) and migraines which last for several days. (Chapman deposition pp. 46-47.) Plaintiff testified that for two weeks following the accident, she could not turn her head. (Chapman deposition p. 45.) Plaintiff testified as follows on her difficulty in lifting objects:

"Q. Now, when you say you cannot lift, you could probably lift this pencil; right?

"A. Right. I can't lift, say—I have to be very careful lifting anything that is very heavy; but what is really hard, I can't pick things up over my head this way, heavy things (indicating).

"Q. Do you have any other things that you can't do?

"A. No, not now. I'm not really limited by it.

"Q. Are there any hobbies or other activities that you don't pursue anymore because of the accident?

"A. No, not right offhand." Chapman deposition, p. 35, ll. 14 to 25.

In treatment of her bodily injuries, plaintiff underwent therapy with hot packs, massage and exercise. (Chapman deposition p. 45.) As additional treatment for those injuries, plaintiff took, and continues to take, muscle relaxants (Chapman deposition p. 44) and plans to go to a chiropractor in the future. (Chapman deposition p. 44.) As needed, the plaintiff currently wears a tract apparatus to relieve her migraines. (Chapman deposition p. 44.) The plaintiff originally had Toradol injections for migraines every three to four weeks, but did not have any such injection for the three months prior to the date of her deposition. (Chapman deposition p. 46.)

The duration of the plaintiff's complete inability to pursue her normal activities was four to six weeks. (Chapman deposition p. 45.) Plaintiff has been told that her pulled neck muscle is not permanent but will probably last "a long time." (Chapman deposition p. 28.)

The report by Dr. Wachs classifies the plaintiff's injury as a soft tissue or strain type of injury (Medical report, Wachs, p. 4) and finds her strength, sensation, coordination and reflexes to all be normal. (Medical report, Wachs, p. 3.) Nor does Dr. Wachs find evidence that

these injuries produced "any major disability" or chronic strain. (Medical report, Wachs, p. 4.) Further, Dr. Wachs finds no evidence of impairment, per the definition in *Dodson,* and no evidence of future disability that can be related to the motor vehicle accident. (Medical report, Wachs, p. 4.)

In light of the factors outlined in *Dodson,* we now analyze our findings. First, plaintiff provides no evidence of substantial impairment of her normal activities. Also, on page 35 of the plaintiff's deposition, plaintiff testifies that, other than heavy lifting, her activities have not been limited by the accident. The report by Dr. Wachs similarly finds no real impairment. Thus, we find the extent of plaintiff's impairment to be burdensome but not disastrous or overwhelming.

Second, we find the major body functions impaired to be her back and neck. These functions, while necessary for many ordinary activities, are not the most critical of body functions such as sight, thought or mobility. Third, the duration of loss of use of her ability to turn her head, two weeks, is not of such duration as to impair her activities for a substantial period of time. Nor do we find any of the treatments performed on the plaintiff as a result of the accident to be overly invasive, risky or experimental. Lastly, the plaintiff seems not to have been limited by her pain.[7]

We find the plaintiff's injuries and impairments to be on par with those suffered by the plaintiff in *Murray.* In both cases, the plaintiffs suffered constraining im-

---

7. "Although we recognize that soft tissue injuries may be accompanied by subjective complaints of pain that are so severe that they result in a 'serious impairment of bodily function,' . . . the impairment must be objectively manifested." *Dodson, supra* at 498, 665 A.2d at 1233. (citation omitted)

pairment for a matter of weeks followed by several months of therapy. Both suffered neck and back stiffness and now take only mild medication for pain. Further, the plaintiff in the case sub judice may experience pain during her normal activities as the plaintiff in *Murray* did. We conclude, as did the Superior Court in *Murray,* that the record shows no serious interference with the plaintiff's daily life and that there is no issue of fact that the plaintiff suffered a minor rather than a serious injury.[8]

Finding that the consequences of the plaintiff's injury did not "involve a serious impact for an extended period of time," per *Dodson, supra* at 499, 665 A.2d at 1234, we hold that the defendant has, as the moving party, established that the plaintiff has not suffered serious impairment of a body function.

Accordingly, since we have found that the consequences of the plaintiff's injury did not "involve a serious impact for an extended period of time" per *Dodson, supra,* we will enter the following order:

## ORDER

And now, October 9, 1996, the defendant's motion for partial summary judgment on the plaintiff's claim for noneconomic damages is granted.

---

8. In her brief, the plaintiff contends that she left her job because of her inability to lift heavy objects while the defendant claims that the plaintiff left as part of a prior plan to return to college. However, we do not find this dispute to be material. "[A] plaintiff may not create a triable issue of fact with subjective evidence only . . . [but] must show a material dispute of fact by objective medical evidence." *Dodson, supra* at 497-98, 665 A.2d at 1233. Plaintiff has offered no medical testimony that she was forced to leave her job due to diminished lifting ability, thus, no triable issue of fact is created.