J-A24032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| E.G. & G. REALTY, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| YOUN SANG KIM AND OK JA KIM AND YSK, INC., INDIVIDUALLY AND TRADING AS YSK CLEANERS, FORMERLY KNOWN AS J. MURRAY CLEANERS | |
| v. | |
| SOUTH BROAD STREET ASSOCIATES | No. 308 EDA 2014 |

Appeal from the Judgment Entered March 5, 2014
in the Court of Common Pleas of Montgomery County
Civil Division at No.: 05-20050

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 18, 2014**

Appellants, Youn Sang Kim (Mr. Kim), his wife, Ok Ja Kim (Mrs. Kim), and YSK, Inc., (YSK), appeal from the judgment entered on March 5, 2014 in favor of Appellee, E.G. & G. Realty, Inc.  We affirm.

We take the relevant facts and procedural history of this case from the trial court's March 13, 2014 opinion and our independent review of the record.  On January 1, 1987, Mr. Kim and South Broad Street Associates entered an agreement pursuant to which Mr. Kim leased a property located

_____

[*] Retired Senior Judge assigned to the Superior Court.

in a shopping center in Lansdale, Pennsylvania (Property) for the purpose of operating a dry cleaning business.[1]  On February 10, 1987, Mr. and Mrs. Kim filed articles of incorporation for YSK.  They owned all the shares of the corporation as tenants by the entireties and continued to operate the dry cleaning business.  In 1988, Appellee, a real estate holding company, purchased the Property and assumed all rights and obligations as landlord under the lease.  On December 2, 1991, YSK executed a new ten-year lease with Appellee for the same retail space.[2]  The lease included an indemnification clause under which YSK was to indemnify and hold Appellee harmless for damages to the Property arising from an occurrence at or in connection with the dry cleaning facility.  (**See** Lease, 12/02/91, at 5, section 13.03).  Mr. and Mrs. Kim remained the sole owners of YSK until 2002, when their son, Do Ho Kim, purchased all YSK shares and became sole shareholder of YSK.

During operation of their dry cleaning business, Appellants used perchloroethylene (PCE), a manufactured liquid chemical solvent commonly used in the dry cleaning process.  Appellants contracted for the PCE to be delivered to the Property and for a company named Safety-Kleen to dispose

_____

[1] A dry cleaning business operated at the store previously.  (**See** Trial Court Opinion, 3/13/14, at 10 n.1).

[2] On January 13, 1997, the parties extended the lease until December 31, 2006.  (**See** N.T. Trial, 5/06/13, at 38-39; **see also** Amendment to Lease Agreement, 1/13/97, at 1).

of the hazardous waste created by the PCE. The dry cleaning machine was located in the back of the store on the ground level, and it typically contained approximately 115 gallons of PCE.

For the first few years of operation of the business, twenty gallons of PCE were delivered to the store every other month in five-gallon plastic containers. Do Ho Kim poured the contents of the containers into the dry cleaning machine, and placed the empty containers next to the machine on the uncovered floor, where they sat for up to a month before the delivery service removed them. The delivery method later changed and the PCE was supplied in 19.2-gallon metal containers that sprayed the PCE into the dry cleaning machine by nozzle or hose.

The part of the dry cleaning machine that held the PCE, called "the cooker," (N.T. Trial, 5/06/13, at 99), was cleaned every week or two, depending on the volume of business. Do Ho Kim scraped the residue containing remnants of PCE from the cooker into a container that hung on the side of the dry cleaning machine. There were times during this scraping process that he did not place a protective tarp on the floor. The containers of residue were placed directly on the floor until they were picked up by Safety-Kleen. Approximately ten times per year, Do Ho Kim mopped the concrete floor surrounding the machine. He poured the dirty mop water containing PCE down a storm drain in the parking lot located approximately seventy feet from the back of the store. In 2003, Appellee discovered PCE

contamination in the parking lot directly behind the dry cleaning facility, and it spent $220,237.19 to complete extensive remediation.

On August 4, 2005, Appellee commenced this action by filing a praecipe for writ of summons. On October 25, 2005, Appellee filed a complaint seeking reimbursement for remediation costs pursuant to the Pennsylvania Hazardous Sites Cleanup Act (HSCA), 35 P.S. §§ 6020.101-6020.1305, and the indemnification clause in the 1991 lease. Appellants filed an answer and counterclaim against Appellee on December 30, 2005. On that same date, Appellants filed a praecipe to join additional defendant South Broad Street Associates. On January 19, 2006, Appellee filed preliminary objections to Appellants' counterclaim. On July 3, 2006, the trial court sustained the preliminary objections and dismissed Appellants' counterclaim with prejudice. On August 20, 2008, Appellants filed a third party complaint against additional defendant South Broad Street Associates, alleging entitlement to indemnification and/or contribution in the event the court found in favor of Appellee.

On May 6 and 7, 2013, the trial court conducted a two-day bench trial. On August 26, 2013, the court entered its decision finding in favor of Appellee and against Appellants in the amount of $220,237.19. (**See** Decision (Decision), 8/26/13, at 3). On September 3, 2013, Appellants filed post-trial motions requesting judgment notwithstanding the verdict (JNOV) or a new trial. The trial court heard argument on the motions on December 2, 2013. On December 19, 2013, the court entered an order amending its

Decision to clarify that only YSK was liable on Appellee's claim for breach of the 1991 lease. (**See** Order, 12/19/13, at 1). However, all Appellants remained liable under the HSCA cause of action. (**See id.**; **see also** Decision, at 1-2). The order denied all other substantive aspects of Appellants' post-trial motions, and stated that because "[Appellants] did not prove by a preponderance of the evidence that PCE was present prior to YSK's operation . . . [their] Third Party Claim against additional defendants [sic] South Broad Street Associates is DENIED." (Order, 12/19/13, at 1; **see also id.** at 2).

On January 17, 2014, Appellants filed a notice of appeal.[3] On January 22, 2014, the trial court entered an order directing Appellants to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Appellants timely complied on February 11, 2014. The court entered an opinion on March 13, 2014. **See** Pa.R.A.P. 1925(a).

_____

[3] Appellants purported to appeal from the trial court's order denying their post-trial motions. However, an "[a]ppeal does not properly lie from an order denying post-trial motions, but rather upon judgment entered following disposition of post-trial motions." **Genaeya Corp. v. Harco Nat. Ins. Co.**, 991 A.2d 342, 345 n.1 (Pa. Super. 2010) (citations omitted). Following notice from this Court, Appellants filed a praecipe to enter judgment, and the trial court entered judgment on March 5, 2014. Therefore, the notice of appeal Appellants filed will be treated as filed after the entry of judgment. **See id**; **see also** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.")

J-A24032-14

Appellants raise the following question for our review: "Are [Appellants] entitled to judgment notwithstanding the verdict or alternatively a new trial [?]"[4] (Appellants' Brief, at 5).

> An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law. Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law.

> > In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. . . .

---

[4] In their statement of questions involved, Appellants divide this issue into a series of four lengthy, rambling sub-parts, in violation of Pennsylvania Rule of Appellate Procedure 2116. **See** Pa.R.A.P. 2116(a) ("The statement of the questions involved must state **concisely** the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail.") (emphasis added); (**see also** Appellants' Brief, at 5). In addition, the subparts in the statement of questions involved do not directly correspond to the two arguments advanced in the argument section of the brief, in violation of Pa.R.A.P. 2119. **See** Pa.R.A.P. 2119(a) (requiring argument section of party's brief to "be divided into as many parts as there are questions to be argued"); (**see also** Appellants' Brief, at 18-28). We therefore limit our discussion to the two arguments Appellants raise in the argument section of their brief. **See Daniel v. Wyeth Pharm.**, **Inc.**, 15 A.3d 909, 915 n.6 (Pa. Super. 2011), *appeal dismissed as improvidently granted*, 82 A.3d 942 (Pa. 2013) (concluding that party's failure to develop issue in argument section of brief constitutes waiver of issue).

- 6 -

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, . . . and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant[.] With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

Questions of credibility and conflicts in the evidence are for the [fact-finder] to resolve and the reviewing court should not reweigh the evidence. If there is any basis upon which the [fact-finder] could have properly made its award, the denial of the motion for judgment n.o.v. must be affirmed.

**Braun v. Wal–Mart Stores, Inc.**, 24 A.3d 875, 890-91 (Pa. Super. 2011),

*appeal granted in part*, 47 A.3d 1174 (Pa. 2012) (citations and quotation

marks omitted).

In reviewing a trial court's denial of a motion for a new trial, the standard of review for an appellate court is as follows:

[I]t is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

\* \* \*

Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

Moreover, our review must be tailored to a well-settled, two-part analysis:

> We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

*ACE American Ins. Co. v. Underwriters at Lloyds and Companies*, 939 A.2d 935, 939 (Pa. Super. 2007), *order affirmed*, 971 A.2d 1121 (Pa. 2009) (citation omitted).

Appellants first argue that "the [trial] court erred by failing to rule in [their] favor on their counterclaim and third party complaint or alternatively granting them a new trial." (Appellants' Brief, at 18) (capitalization omitted). Specifically, Appellants claim that the court should have ruled in their favor because the evidence presented by their expert, Dr. Mohammad Farrukh Mohsen, "established that the PCE discovered in [Appellee's] parking lot was put there by someone other than YSK, Inc., prior to YSK, Inc.'s commencing its operation." (*Id.*). This argument is waived.

An appellate brief must provide citations to the record and to relevant supporting authority. *See* Pa.R.A.P. 2119(a)-(c). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Krauss v. Trane U.S. Inc.*, 2014 WL 5359007, at \*23 (Pa. Super. filed Oct. 22, 2014) (citation omitted). "When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Id.* (citing Pa.R.A.P. 2101) (case citation

omitted); *see also Bombar v. West American Ins. Co.*, 932 A.2d 78, 94 (Pa. Super. 2007) (finding appellant's issue waived where it set forth no relevant authority supporting its position).

Here, Appellants' argument is underdeveloped and does not contain **any** citation to relevant legal authority. (**See** Appellants' Brief, at 18-21). Further, while Appellants rely heavily on the testimony of their expert, Dr. Mohsen, to support their claim, they provide this Court with no citations to his testimony in the record. Accordingly, we find that Appellants' first argument is waived.[5] **See** Pa.R.A.P. 2101; *see also Bombar*, *supra* at 94.

_____

[5] Moreover, we note that the trial court did not find the testimony of Appellants' expert credible, stating:

> [it] did not find Dr. Mohsen credible, nor did it find his dating and methodology convincing. Indeed, Dr. Mohsen could not say with certainty whether the release occurred during a single event, or over the course of many events. Importantly, although Dr. Mohsen posited the release occurred before January 1, 1987, his data indicated fluctuating levels of PCE in 2003 and 2004. Dr. Mohsen admitted one reason for the spike in the PCE levels could be a new release. [Appellee's] expert, Gary Brown, testified there were not enough tests for anyone to conclude the timing of the release. Mr. Brown stated the method employed by Dr. Mohson would require more data and additional calibrating to be accurate. The court found Mr. Brown's testimony to be more credible than Dr. Mohson's testimony.

(Trial Ct. Op., at 10) (record citations omitted).

As stated above, questions of witness credibility were for the trial court as fact-finder to resolve, and this Court will not reweigh the evidence. **See Braun**, **supra** at 891.

In their second argument, Appellants contend that the trial court erred in finding them liable under the HSCA.[6] (**See** Appellants' Brief, at 21-28). They claim that the court's finding that they are "responsible persons" under the HSCA is erroneous because there is no evidence that they released any hazardous substance into the environment. (**Id.** at 27; **see id.** at 26). Appellants argue that responsibility for the parking lot rested with Appellee as the landlord and owner of the property, and they posit that the dry cleaner that operated at that site before Appellants caused the contamination. (**See id.** at 23, 26-27). This issue does not merit relief.

Under the HSCA, "[a]ny person allowing . . . a release [of a hazardous substance is] liable for the response costs caused by the release or the violation." 35 P.S. § 6020.1101. The HSCA allows for private causes of action to allow a party to recover costs incurred in remediating a contaminated property. **See** 35 P.S. § 6020.702(a)(3) ("A person who is responsible for a release . . . of a hazardous substance from a site as specified in section 701 is strictly liable for . . . reasonable and necessary or appropriate costs of response incurred by any other person."); **see also** **Smith v. Weaver**, 665 A.2d 1215, 1221 (Pa. Super. 1995).

---

[6] "The application of a statute is a question of law, and our standard of review is plenary." **Little Mountain Cmty. Ass'n Inc. v. S. Columbia Corp.**, 92 A.3d 1191, 1195 (Pa. Super. 2014) (citation and quotation mark omitted).

Section 701(a) of the HSCA provides in relevant part that a person is responsible for a release of a hazardous substance from a site when any of the following apply:

(1) The person owns or operates the site:

(i) when a hazardous substance is placed or comes to be located in or on a site;

(ii) when a hazardous substance is located in or on the site, but before it is released; or

(iii) during the time of the release or threatened release.

35 P.S. § 6020.701(a).[7]

Thus,

Subsection 701(a) of the HSCA establishes the following elements to impose liability:

(1) There must have been a release or threatened release,

(2) of a hazardous substance,

(3) from a site, and

(4) there must be a responsible person as stated in subsection 701(a) of HSCA (e.g., a person who "owns or operates" a site as stated in HSCA subsection 701(a)(1)).

---

[7] Appellants acknowledge that PCE is a hazardous substance and that there was PCE contamination in the parking lot. (**See** N.T. Trial, 5/07/13 at 263; Trial Ct. Op., at 7; Appellants' Brief, at 27-28); **see also** 35 P.S. § 6020.103 (defining hazardous substance); 40 C.F.R. § 302.4 (designating PCE a hazardous substance).

*DER v. Bryner*, 613 A.2d 43, 45 (Pa. Cmwlth. 1992).[8]

The HSCA defines the term "owner or operator" broadly as "[a] person who owns or operates or has owned or operated a site, or otherwise controlled activities at a site." 35 P.S. § 6020.103.

Here, the evidence at trial established that Mr. Kim individually owned, and Mr. and Mrs. Kim jointly operated, the dry cleaning business from January 1, 1987 until they incorporated YSK approximately one month later. (*See* N.T Trial, 5/06/13, at 78-81). Mr. and Mrs. Kim were president and treasurer of YSK, respectively, and they were its sole owners for fifteen years until they sold their shares to their son Do Ho Kim in 2002. (*See id.* at 81-83; N.T Trial, 5/07/13, at 291, 295-96).[9] Mr. and Mrs. Kim, along with Do Ho Kim, operated activities at the dry cleaning business and they used PCE in their cleaning process. (*See* N.T. Trial, 5/06/13, at 83, 85; N.T Trial, 5/07/13, at 289, 291, 297). YSK purchased and arranged for delivery of the PCE, and it was YSK's practice to keep the dry cleaning machine full with 115 gallons of PCE most of the time. (*See* N.T Trial, 5/06/13, at 85-86; N.T Trial, 5/07/13, at 342).

_____

[8] "Although decisions of the Pennsylvania Commonwealth Court are not binding on this Court, they may serve as persuasive authority." *Pollina v. Dishong*, 98 A.3d 613, 622 n.8 (Pa. Super. 2014) (citation omitted).

[9] Mrs. Kim continued to be listed as treasurer of YSK on Pennsylvania Department of State records at least until April 30, 2013. (*See* N.T. Trial, 5/06/13, at 77).

Do Ho Kim testified that he regularly scraped the residue containing remnants of PCE from the dry cleaning machine's cooker into a container that hung on the side of the machine. (**See** N.T. Trial, 5/06/13, at 100-02). There were times during this scraping process that he did not place a protective tarp on the floor. (**See id.** at 104). Do Ho Kim then placed containers of residue directly on the floor until Safety-Kleen picked them up. (**See id.**). Approximately ten times per year, he mopped the concrete floor surrounding the machine. (**See id.** at 105-06, 120). He poured the dirty mop water containing PCE down a storm drain in the parking lot located approximately seventy feet from the back of the store. (**See id.** at 106, 108, 121; **see also** Trial Ct. Op. at 5, 8). Appellee's expert, Gary Brown, testified that soil and rock testing showed "very high" concentrations of PCE exceeding state health standards immediately next to the dry cleaning store, and that there is "no question that there's a groundwater release[.]" (N.T. Trial, 5/06/13, at 153-54; **see id.** at 160, 162). Appellants' expert, Dr. Mohsen, opined that the contamination occurred before commencement of Appellants' tenancy in January 1987; however, he did not dispute that a PCE release occurred, stating "[t]he data suggests that there was a release." (N.T. Trial, 5/07/13, at 263; **see id** at 257).

Upon review of the record, we agree with the trial court that Appellants are "responsible for a release . . . of a hazardous substance from a site" and liable for the remediation costs incurred by Appellee. 35 P.S. § 6020.702(a)(3). The record supports the court's conclusion that there was a

release of PCE from the dry cleaning store and that Mr. Kim, Mrs. Kim, and YSK "owned or operated . . . or otherwise controlled activities at [that] site." 35 P.S. § 6020.103; *see also* 35 P.S. § 6020.701(a)(1); **Bryner**, *supra* at 65-66 (holding that president of company was a responsible person under subsection 701(a)(1) of HSCA because he controlled activities at the site); (Trial Ct. Op. at 4). Therefore, Appellants' argument that the court erred in finding them liable under the HSCA does not merit relief. Accordingly, Appellants have failed to establish that the court erred or abused its discretion in denying their request for JNOV or a new trial. **See Braun**, *supra* at 890; **see also ACE American Ins. Co., supra** at 939.

Judgment affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 11/18/2014*