690 A.2d 1245

**George ATIYEH, Appellant**

v.

**Stewart BEAR and R. Bruce and Linda Whitney, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 19, 1996.

Filed Feb. 27, 1997.

Thomas F. Traud, Jr., Allentown, for appellant.

Joseph S. D'Amico, Jr., Center Valley, for Bear, appellee.

Jami W. McKeon, Philadelphia, for Whitney, appellee.

Before McEWEN, President Judge, and POPOVICH, and MONTEMURO*, JJ.

McEWEN, President Judge.

This appeal has been taken from the order which granted summary judgment in favor of appellees, Stewart Bear and R. Bruce and Linda Whitney, and dismissed the claims of appellant, George Atiyeh, for specific performance, namely, requiring appellees to record the deed and mortgage to property which had been the subject of an agreement of sale between the parties. In the alternative, appellant requested rescission and restitution, injunctive relief to preclude appellees from excluding appellant from the property, and an accounting for

* Retired Justice assigned to Superior Court.

the reasonable rental value of the premises as farmland. Summary judgment was also granted in favor of appellees on a counterclaim in the nature of a quiet title action.[1]

The facts of this case have been aptly summarized by the distinguished Judge James K. Gardner as follows:

Based upon the depositions, affidavits, record papers and agreements of counsel at oral argument, the pertinent facts are as follows. In 1989 plaintiff George Atiyeh and defendants Stewart and Rosemarie Bear entered into an agreement dated July 20, 1989 for the sale of a 13.8790–acre parcel of farmland located on Shale Head Road, Township of Weisenberg, Lehigh County, Pennsylvania (sometimes referred to as the "Shale Head Road Tract") owned by the Bears. The contract price was $126,100. Plaintiff was required to pay the Bears $13,050.00 at the time of signing the agreement, an additional $13,050.00 at the time of closing and monthly payments of $1,161.08 for ten years thereafter. The agreement is silent concerning when title was to be transferred, but settlement was set for November 3, 1989.

At settlement, plaintiff signed a bond for $100,000.00 payable to Stewart E. and Rosemarie M. Bear and executed a mortgage (titled "Indenture") dated November 3, 1989 in the amount of $100,000.00 in favor of Stewart E. and Rosemarie M. Bear. However, it is conceded by the parties that plaintiff failed to pay the balance of the down payment due, and a second closing agreement dated November 3, 1989 was signed allowing plaintiff additional time to pay the remainder of the down payment. The closing agreement stated, in part, "Nothing to be recorded until the $10,266.38 is paid by Atiyeh to Bear with Attorney [Gerald M.] Barr holding all documents. Atiyeh also needs to get to [Attorney Thomas F.] Traud $2,551.00 so Deed, Mortgage, Release and taxes can be paid and recorded."

1. The trial court also: (1) declared null and void the agreement of sale dated July 20, 1989, between appellant and appellees, (2) declared null and void the alleged deed purportedly held in escrow, and (3) vacated the notice of *lis pendens* filed by appellant on March 21, 1994.

From that point forward plaintiff was constantly in default on his obligation to make timely payments to the Bears, tendering many checks drawn on accounts with insufficient funds. In his deposition, plaintiff admits that he was continually late in making payments to the Bears. "Oh, I could be late as much as 10 days to two months, sometimes maybe as much as three months." Title was never delivered to plaintiff.

On March 12, 1990 plaintiff filed a voluntary petition for bankruptcy protection under Title 11 of the United States Code, Chapter 11, in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Mr. Atiyeh neither included defendant in his list of creditors nor listed the property as an asset in his bankruptcy filings. Defendant was unaware of this filing. Plaintiff continued to make some payments to the Bears after filing his petition.

On November 11, 1992 Mr. and Mrs. Bear, through their attorney, Gerald M. Barr, Esquire, sent a letter to plaintiff declaring him in default because of his failure to make required payments of principal and interest on the note and mortgage for the three months prior to the letter, August, September and October 1992. In that letter, Mr. and Mrs. Bear exercised their right under the Indenture to accelerate payment of the entire principal balance, for a total of $81,265.07 and demanded payment by November 20, 1992. Thereafter, plaintiff tried to continue paying the Bears the usual monthly payments, but these were rejected by Mr. and Mrs. Bear. He did not tender the full balance demanded by the Bears at any time.

Sometime after November 20, 1992, Mr. and Mrs. Bear granted R. Bruce Whitney and Linda Whitney an option to purchase the property in exchange for monthly option payments which began December, 1992. The option agreement provides that the Whitneys may not exercise their option until plaintiff's claims to the property are resolved.

On December 9, 1992, the bankruptcy court approved Mr. Atiyeh's disclosure statement, which then was sent with his proposed reorganization plan ("Plan") to his creditors for

their consideration. None of these documents disclosed the agreements, bond or mortgage with the Bears, nor did the Bears receive a copy. On January 26, 1993, the bankruptcy court confirmed Mr. Atiyeh's Plan.

Paragraph 1 of Article 9 of plaintiff's Disclosure Statement in Connection with First Amended Plan of the Reorganization filed September 9, 1992, with the bankruptcy court indicates that, unless a Chapter 11 debtor "moves within 60 days of the filing of the case to assume the unfinished portion of a lease or executory contract, the lease or contract is deemed rejected, as in FINISHED." In Paragraphs 2 and 4 of Article 9 of the disclosure statement, Mr. Atiyeh rejected the unexpired leases of which he was a tenant or tenant representative. He assumed the unexpired leases in which he was a lessor or lessor representative, and contracts and contractual relationships with his suppliers and customers in the ordinary course. In Paragraph 5 he rejected "[a]ll other executory contracts oral or written". On December 23, 1993 Mr. Atiyeh filed a Motion to Assume Contract in the bankruptcy court concerning the purchase of real estate located in Lehigh County, Pennsylvania at Shale Head Road from the Bears. The Bears filed a motion in opposition, and a hearing was held on March 17, 1994 at which the Whitneys also participated through counsel.

The Honorable Thomas M. Twardowski, United States Bankruptcy Judge, denied the motion by Order of March 17, 1994. He further ordered that the "Debtor has no further rights in the Agreement or property identified in the Motion." Subsequently, plaintiff filed two motions to reconsider and vacate that Order, which were also opposed by the Bears. After reconsideration, Judge Twardowski modified the last three lines of his March 17, 1994 Order. The September 8, 1994 Order of Judge Twardowski provides as follows:

ORDERED, ADJUDGED AND DECREED that said Motion is DENIED WITH PREJUDICE AND is therefore, DISMISSED WITH PREJUDICE, for the reason that the contract at issue was not included in those

specified in Debtor's Second Amended Plan and accompanying Disclosure Statement as one which Debtor intended to assume and, therefore, it is deemed rejected (at the latest) as of the date of confirmation of Debtor's Second Amended Plan, no other timely Motion to Assume said contract having been filed by Debtor in this case.

In a footnote to the September 8, 1994 Order, Judge Twardowski indicated that "[t]he parties reserve their rights to argue the effect of my ruling herein on the issues pending in Lehigh County Common Pleas Court, in light of 11 U.S.C. § 365 since that Court, not I, shall properly rule on the issues raised therein." Plaintiff's appeal of Judge Twardowski's September 8, 1994 Order was dismissed on October 27, 1994 by the United States District Court for the District of Eastern Pennsylvania on procedural grounds. Six months prior to filing his motion to assume, on June 25, 1993, plaintiff filed the within action against Stewart Bear, requesting in his complaint (1) specific performance requiring defendant to record the deed and mortgage; (2), in the alternative, rescission and restitution; (3) an injunction to prohibit defendant from seeking assistance from the authorities in keeping plaintiff off the property; and (4) an accounting for the reasonable rental value of the premises as farmland from settlement to date of adjudication.

The Bears filed an Amended Answer on September 2, 1993 denying plaintiff's allegations. Defendants' answer included a counterclaim to quiet title. In his counterclaim Mr. Bear requested the court to (1) declare that George Atiyeh has no right, title or interest in the property and that Mr. and Mrs. Stewart Bear own the property in fee simple and are entitled to exclusive possession; (2) enjoin Mr. Atiyeh and all persons claiming under him from asserting any right, title or interest in the property; (3) enjoin plaintiff from entering on the property or any other of the Bears' properties; (4) declare that the Bears are entitled to the quiet and peaceful possession of the property; and (5) declare that the Bears do not owe plaintiff for rental or for any other monies claimed.

On February 17, 1995 defendant filed the motion for summary judgment which is presently before the court. By Order dated April 28, 1995, the undersigned granted the Petition to Intervene of R. Bruce Whitney, Esquire, and Linda Whitney, filed April 11, 1995.

Appellant argues that the trial court erred when it granted summary judgment in favor of appellees, because: (1) the order of the bankruptcy court does not have a collateral estoppel effect upon his state law claims, (2) the agreement of sale was not an executory contract, (3) the trial court misinterpreted the modified order entered by the bankruptcy court on September 8, 1994, and (4) genuine issues of material fact exist which preclude the entry of summary judgment.

Our scope of review, in ruling upon a motion for summary judgment, is plenary. Rule 1035(b) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Rule 1035(d) provides that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial".

"The moving party has the burden of proving the nonexistence of any genuine issue of material fact." *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 202–04, 412 A.2d 466, 468–69 (1979). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). *Accord: Commonwealth, Dept. of Environmental Resources v. Bryner,* 149 Pa.Cmwlth. 59, 62–64, 613 A.2d 43, 45 (1992).

■ Appellant first asserts that the trial court erred in finding the doctrine of collateral estoppel applicable in this case as the issue decided in bankruptcy court was not identical to the issue presented in this appeal. We disagree.

Collateral estoppel applies if (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and, (5) the determination in the prior proceeding was essential to the judgment.

*Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 492, 644 A.2d 1186, 1189 (1994). The rejection of an executory contract by a debtor during a bankruptcy proceeding constitutes a breach of that contract. 11 U.S.C. § 365(g); *In re DAK Industries, Inc.,* 66 F.3d 1091, 1094 (9th Cir.1995); *In re Stewart Foods, Inc.,* 64 F.3d 141, 144–45 (4th Cir.1995). It is also well-settled that state courts are required to give full faith and credit to proceedings of federal courts. *Mintz v. Carlton House Partners, Ltd.,* 407 Pa.Super. 464, 474–76, 595 A.2d 1240, 1246 (1991)(doctrine of *res judicata* precluded plaintiff from relitigating claims in state court after bankruptcy court heard argument and found claims invalid). Therefore, as the normal rules of *res judicata* and collateral estoppel apply to decisions of bankruptcy courts, the final order of the bankruptcy court precludes relitigation of the same issue in this Court. *Mintz v. Carlton House Partners, Ltd., supra* at 474–76, 595 A.2d at 1246; *Federal Deposit Insurance Corporation v. Shearson–American Express, Inc.,* 996 F.2d 493, 497 (1st Cir.1993), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994).

In the instant case, the bankruptcy court has finally determined that appellant "rejected" an executory contract for the sale of the Bear tract by failing to "assume" the contract and the related debt in his bankruptcy reorganization plan. As this finding that appellant rejected the executory contract also

constitutes a finding that appellant breached that contract, we are precluded by the doctrine of collateral estoppel from reviewing the merits of the arguments raised by appellant in support of his claim that he has performed on the agreement and is entitled to relief. 11 U.S.C. § 365(g); *Mintz v. Carlton House Partners, Ltd., supra.*

Appellant, on March 12, 1990, filed a voluntary petition for bankruptcy. The bankruptcy court approved the disclosure statement filed by appellant on December 9, 1992, Article 9 of which stated, in pertinent part:

*Article 9. UNEXPIRED LEASE AND EXECUTORY CONTRACTS*

1. In a chapter 11, unless the debtor moves within 60 days of the filing of the case to assume the unfinished portion of a lease or executory contract, the lease or contract is deemed rejected, as in FINISHED. Therefore, a debtor must let the landlord, the tenant, or other contracting party know, within that time, what debtor intends to do about the unfinished contract.

\* \* \* \*

4. *Contracts assumed.* Debtor will assume those ongoing contracts and contractual relationships with his suppliers and customers in the ordinary course.

5. *Contracts rejected.* All other executory contracts oral or written, are rejected.

While copies of the disclosure statement and the proposed reorganization plan were sent to the creditors of appellant for their consideration, none of these documents disclosed the contract between appellant and the Bears, nor were the Bears given notice of the bankruptcy proceedings. The bankruptcy court, on January 26, 1993, confirmed the reorganization plan, and appellant, almost one year later, on December 23, 1993, filed a motion with the bankruptcy court to assume the agreement of sale. A hearing was held by the bankruptcy court on March 17, 1994, and after reviewing the reorganization plan, the disclosure statements, the arguments of David

Dunn, Esquire, appellant's bankruptcy attorney, and the opinion testimony of John McLaughlin, a United States Trustee, the court denied the motion to assume the Bear contract.

Appellant moved for reconsideration of this order[2] and subsequently filed an appeal with the United States Federal District Court for the Eastern District of Pennsylvania which was denied by order dated October 27, 1994 on procedural grounds. The bankruptcy court order thus became a final judgment conclusively establishing that appellant had rejected and breached this contract. 11 U.S.C. § 365; *In re Stewart Foods, Inc., supra.*

The parties do not dispute that the judgment was on the merits, that appellant was a party in the prior case, that appellant had a full and fair opportunity to litigate this issue, and that this issue was essential to the judgment. As such, we find that the doctrine of collateral estoppel precludes our review of the claims raised by appellant regarding the Bear contract, and that, while appellant does seek to raise arguments before this Court which would require factual determinations and thus preclude summary judgment, those arguments are no longer available to the appellant since the final order of the bankruptcy court conclusively establishes his

2. The March 17, 1994, order was modified by the bankruptcy judge as follows:

AND NOW, this 8th day of September, 1994, it is ORDERED that Debtor's Motion to Reconsider my Order of March 17, 1994 is GRANTED IN PART for the sole purpose of modifying[1] the last three lines of said order so that it now reads as follows:

"ORDERED, ADJUDGED AND DECREED that said Motion is DENIED WITH PREJUDICE AND is therefore DISMISSED with PREJUDICE for the reason that the contract at issue was not included in those specified in Debtor's Second Amended Plan and accompanying Disclosure Statement as one which Debtor intended to assume and, therefore, it is deemed rejected (at the latest) as of the date of confirmation of Debtor's Second Amended Plan, no other timely Motion to Assume said contract having been filed by Debtor in this case."

1. The parties reserve their rights to argue the effect of my ruling herein on the issues pending in Lehigh County Common Pleas Court (# 93–E51), in light of 11 U.S.C. § 365 since that Court, not I, shall properly rule on the issues raised therein.

breach of an executory contract, precluding further inquiry by the trial court or this Court.

Appellant next argues that the Bears should be required to record the deed and mortgage to the Bear tract, because the contract for the sale of the land included an agreement of sale, a closing agreement and a mortgage, and these three agreements cannot be properly treated as a single executory contract. Appellant also claims that Attorney Gerald M. Barr, counsel for the Bears who also served as escrow agent to this transaction, improperly withheld the deed to the property as all payments required under the closing agreement were made. Generally, an agreement of sale merges into the deed, and no recovery may be obtained based on the earlier agreements. *Perrige v. Horning,* 440 Pa.Super. 31, 40 n. 5, 654 A.2d 1183, 1187 n. 5 (1995). However, delivery of the deed is necessary to render it legally operative. *Herr v. Bard,* 355 Pa. 578, 580–82, 50 A.2d 280, 281 (1947). Whether there has been delivery depends on the intention of the grantor as shown by his words and action and by circumstances surrounding the transaction. *Abraham v. Mihalich,* 330 Pa.Super. 378, 379–81, 479 A.2d 601, 602 (1984). Conditional delivery or a delivery in escrow of a deed is not a delivery to the grantee. *Stephenson v. Butts,* 187 Pa.Super. 55, 58–60, 142 A.2d 319, 321 (1958). The mortgage, although in form a conveyance of title, is only security for the payment of money or the performance of another collateral obligation, usually a bond. *Mancine v. Concord–Liberty Savings and Loan Association,* 299 Pa.Super. 260, 265–67, 445 A.2d 744, 747 (1982).

Appellant claims that Mr. Barr improperly withheld title to the Bear tract after all conditions precedent to delivery of the deed and mortgage were made. As discussed above, appellant and the Bears entered into an agreement of sale on July 20, 1989, under which appellant agreed to purchase the described property for $126,100.00. Appellant agreed to pay $13,050.00 upon signing the agreement of sale, to pay another $13,050.00 at the closing scheduled for November 3, 1989, and to pay $1,161.08 per month for ten years. At closing the parties executed a mortgage in the amount of $100,000.00, but appel-

lant was unable to pay the balance of the down payment due. The parties then entered into a closing agreement which stated that title would be transferred to appellant after he paid the remainder of the down payment to the Bears and tax and transfer fees to his attorney. Contrary to the assertions of appellant, the record does not indicate that these payments were ever made, and we, therefore, cannot find that delivery of the deed to this property was improperly withheld. As such, the agreement of sale and closing agreement did not merge into the deed, and these agreements remain effective.

We also must agree with the bankruptcy court that the agreement of sale and closing agreement constitute "executory contracts" under bankruptcy law.

> The Bankruptcy Code does not define the term "executory contract." Courts addressing this issue have generally relied upon the definition set forth in V. Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 MINN.L.REV. 439, 460 (1973), that an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other."

*In re Walnut Associates*, 145 B.R. 489, 497 (Bankr.E.D.Pa. 1992) (noting that the definition of an executory contract should be very broad). Professor Countryman further explains that, "a contract under which the vendee still owes a material part of the purchase price and the vendor has not transferred title, and is not obligated to do so until that price is fully paid, is an executory contract." Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.R. 439, 469 (1973). In the instant case, the record indicates that appellant did not make the payments required by the closing agreements, and the Bears did not transfer title to the property. We also note that appellant failed to disclose the agreement, the note, or the mortgage related to the purchase of the Bear tract in his disclosure statement as required by 11 U.S.C. § 1125 of the Bankruptcy Code. As such, we find that

the agreement to purchase the Bear tract was an "executory contract".

■ Appellant further argues that the trial court has misinterpreted the modified order entered by the bankruptcy court on September 8, 1994. Appellant maintains that the footnote in that order, which provided "[t]he parties reserve their rights to argue the effect of my ruling herein on the issues pending in Lehigh County Common Pleas Count (# 93–E51), in light of 11 U.S.C. § 365 since that Court, not I, shall properly rule on the issues raised therein" requires that we reverse the decision of the trial court. We again disagree. The Bankruptcy Court for the Eastern District of Pennsylvania recently explained:

> The measure of the damages of a party to a rejected executory contract is a question of state law. *In re Besade*, 76 B.R. 845 (Bankr.M.D.Fla.1987). Such damages are not necessarily limited exclusively to monetary damages. *In re Aslan*, 65 B.R. 826 (Bankr.C.D.Calif.1986). In this respect, the discussion in *In re Walnut Associates*, 145 B.R. 489 (Bankr.E.D.Pa.1992) is helpful. Rejection of an executory contract means that the non-debtor party cannot make an administrative claim against the Debtor's estate. If the debtor fails to fulfill its obligations under the subject contract the non-debtor party to the contract is limited in its claims for the breach to the treatment accorded to the debtor's general unsecured creditors; unless specific performance is available to the non-debtor party under applicable state law. *Id.* at 494. If State law does authorize specific performance under a rejected executory contract *the non-debtor should be able to enforce the contract against the debtor irrespective of the Debtor's rejection.* In considering whether a rejected contract can be enforced against the Debtor the emphasis should be on whether the contract's terms are specifically enforceable under State law rather on the happenstance of "executoriness." *Id.* at 495.

*In re West Chestnut Realty of Haverford, Inc.*, 177 B.R. 501, 506 (Bankr.E.D.Pa.1995) (emphasis added). While state law remedies do remain available to a non-debtor party to a

contract subsequently rejected in a bankruptcy proceeding, the same does not hold true for the debtor who is responsible for the rejection and breach. We, therefore, reject the interpretation of the modified order urged upon us by appellant which would afford him the opportunity to avoid disclosure of his bankruptcy, silently reject his contract, and subsequently sue the non-debtor in state court on the contract he had previously rejected.

Having found each of the arguments raised by appellant to be meritless, and concluded that no genuine issues of material fact exist, we affirm the entry of summary judgment in favor of appellees.

Order affirmed.