## Knorr v. Knorr

*Theodore R. Laputka,* for plaintiff.
*Susan M. Hill,* for defendant.

JAMES, *J.,* October 5, 2005—This matter is before the court to consider plaintiff's petition for special relief

to set aside postnuptial agreement. Plaintiff filed a divorce complaint on November 12, 2004, and filed this petition concerning the postnuptial agreement on November 29, 2004. This court conducted a hearing regarding the petition to set aside the postnuptial agreement on March 28, 2005. After the hearing, this court ordered the parties to attempt to amicably resolve this matter. If they could not, they were directed to notify the court and to file briefs, after which this court would render a decision. The parties could not amicably resolve this issue, and the matter is ready for decision.

The parties were married on October 13, 1994, and they separated on November 5, 2004. This was the second marriage for each party. Their first child was born on December 20, 1994. A second child was born three years later. On January 11, 1995, approximately three weeks after plaintiff gave birth to the parties' first child, she went to defendant's attorney's office to discuss estate planning issues and, apparently, a postnuptial agreement. Plaintiff does not recall the postnuptial agreement. Nothing was signed at that meeting. The parties met again with defendant's attorney to discuss the same documents on February 21, 1995. No documents were signed at that time. Several months later, on July 20, 1995, the parties signed a postnuptial agreement at the defendant's attorney's office. Plaintiff does not recall signing the postnuptial agreement. Plaintiff was unrepresented by counsel at all times.

The postnuptial agreement obligated the defendant to make plaintiff one-half tenants by the entireties owner of one of his corporations. He never did so. Although there is a notation in the corporation's stock certificate

ledger that a certificate was transferred to plaintiff and defendant on July 27, 1995, no certificate was found. Defendant did not produce the stock book at a January 26, 2005 deposition although subpoenaed to do so. He found the stock book two days before the March 28, 2005 hearing. Defendant never acknowledged plaintiff as co-owner in any tax filings or other documents subsequent to 1995. Eventually, said corporation became worthless. It had been valued at $92,000 by defendant in his financial disclosure in the postnuptial agreement.

The postnuptial agreement also obligated the defendant to transfer a home (the subsequent marital abode) to tenants by the entireties ownership with plaintiff. The home was valued at $250,000 with a $100,000 mortgage in 1995. The deed was never delivered to plaintiff nor recorded. It was apparently signed by defendant and notarized by defendant's attorney's real estate specialist on July 21, 1995. However, it remained in defendant's attorney's file. Neither plaintiff (nor plaintiff's divorce attorney) ever saw the signed deed until the date of the hearing on March 28, 2005. Defendant did not produce the deed at a January 26, 2005 deposition although subpoenaed to do so. In the interim since 1995, defendant re-mortgaged the premises described in the proposed deed to plaintiff.

The postnuptial agreement reflected defendant's net worth at $1,673,314, largely consisting of stock, real estate and business interests. Plaintiff's net worth was placed at $42,500, consisting of a car, jewelry and furniture. Interestingly, defendant's asset disclosure form is handwritten and signed by him. Plaintiff's asset disclo-

sure form is typed and signed by her. In essence, the postnuptial agreement provided plaintiff with her rights in the corporation and the real estate in exchange for her waiver of all other marital rights, including but not limited to estate rights, alimony and support and property rights, except regarding property placed in joint ownership during the marriage.

The issue is whether or not the postnuptial agreement is rescindable because of failure of consideration or breach of contract.[1] This court finds that there was both a failure of consideration and a breach of contract. Plaintiff's consideration consisted of waiving her financial marital rights. Defendant's primary contractual consideration was his promise to transfer to plaintiff, "contemporaneously" with the signing of the agreement, one-half interest in the corporation and the real estate. Neither the stock nor the real estate was transferred, contemporaneously or by the time the parties separated in 2004. Nor does it appear that defendant ever attempted or intended to transfer the stock or real estate. No stock certificate was ever found. As late as 2003, defendant stated on his tax returns that he, himself, was the sole owner of the stock, with no mention of plaintiff.

The deed may have been signed by defendant in 1995, but it was never delivered to plaintiff, nor recorded, nor attempted to be delivered or recorded. Defendant is a businessman who refinanced the same real estate after 1995. During the refinancing process, he must have

---

1. Plaintiff also asserts that the postnuptial agreement is unenforceable because it "did not include full and fair disclosure at the time of its execution." However, there was no evidence of lack of full and fair disclosure.

known and noticed that plaintiff was not a record owner of the real estate and that the deed was not delivered or recorded. Still, he chose not to effectuate its delivery.

"[D]elivery of the deed is necessary to render it legally operative. *Herr v. Bard,* 355 Pa. 578, 580-82, 50 A.2d 280, 281 (1947). Whether there has been delivery depends on the intention of the grantor as shown by his words and action and by circumstances surrounding the transaction. *Abraham v. Mihalich,* 330 Pa. Super. 378, 379-81, 479 A.2d 601, 602 (1984). Conditional delivery or a delivery in escrow of a deed is not a delivery to the grantee. *Stephenson v. Butts,* 187 Pa. Super. 55, 58-60, 142 A.2d 319, 321 (1958)." *Atiyeh v. Bear,* 456 Pa. Super. 548, 560, 690 A.2d 1245, 1251 (1997).

In this case, there was no attempt to deliver the deed or the stock to plaintiff. Thus, defendant breached his executory obligations under the contract.

Moreover, since defendant did not fulfill his promise to make plaintiff co-owner of the stock and real estate, almost a decade passed without plaintiff participating as co-owner of the corporation and the real estate, both of which are now either worthless or differently encumbered, *i.e.,* re-mortgaged. The consideration that she was entitled to receive for her promise to forgo certain marital rights is now different than promised. The corporation is worthless. The real estate is re-mortgaged. If she had been part owner of the stock and real estate over the last decade, the machinations of the corporation and real estate may have been different. Thus, it would be pure speculation to determine the present value of the consideration which plaintiff was promised 10 years ago. The

consideration has failed totally as defined by the Restatement (First) of Contracts §274:

"Failure of consideration as a discharge of duty.

"(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge.

"(2) The rule of subsection (1) is applicable though the failure of performance is not a violation of legal duty."

Thus, rescission is the applicable remedy since there is a breach of contract, failure of consideration and impossibility to perform the contract as intended a decade ago.

"[I]f the contract becomes impossible of performance, the relation ends, and the money advanced can be recovered back (*Hudson v. West,* 189 Pa. 491[, 42 A. 190]; *Lieb v. Painter,* 42 Pa. Super. 399; *Paxton Lumber Co. v. Panther Coal Co.,* 83 W.Va. 341[, 98 S.E. 563]), and the same is true if the right to rescind arises because of failure to perform by the other party: *Crossgrove v. Himmelrich,* 54 Pa. 203. There are cases which have recognized the rule that, in the absence of an express provision to the contrary, if the act to be performed is necessarily dependent on the continued existence of the specific thing, the perishing thereof before time of performance, without the fault of the promissor, as by an act of God, public enemy or the law, will excuse the contractor on the ground of an implied condition in this regard, and further deliveries by the vendor will be excused: *Dixon*

*v. Breon,* 22 Pa. Super. 340; 12 A.L.R. 1274, note." *William F. Mosser Co. v. Cherry River Boom & Lumber Co.,* 290 Pa. 67, 72, 138 A. 85-88 (1927).

The Pennsylvania Superior Court has set forth a five-prong analysis to determine if rescission is appropriate:

"In resolving this dispute, we begin with a recitation of various principles of law germane to the case at bar: *First,* the task of interpreting a contract is generally performed by a court rather than a jury, *Walton v. PNB,* 376 Pa. Super. 329, 545 A.2d 1383 (1988); *Second,* where a contract is executory on both sides (as was the case here), the party seeking the legal enforcement of the stipulations of the other party must show a compliance with his own. In other words, that which is first to be performed must be done or tendered before the party who is to do it can sustain a suit against the other, 17A Am.Jur.2d, §§609, 470 ('in the case of a concurrent condition, there is no liability until the condition is performed or occurs.'); *Third,* it is the general rule that where no time is agreed upon for the completion of a contract, it must be completed within a reasonable time under all the circumstances, 8 P.L.E. Contracts, §245; 17A Am.Jur.2d, §§202, 479; *Fourth,* where contractual promises or covenants are mutual and dependent, the failure of one party to perform authorizes the other to rescind the contract, 17A Am.Jur.2d, §§570, 574 (Interdependence of contractual provisions, in which a material breach occurs by one party, entitles the other party to rescind); and *Fifth,* what is a reasonable time within which to exercise the right of rescission, when the facts are undisputed, is a question of law to be determined by the court, 8 P.L.E. Contracts,

§319." *Francis Gerard Janson P.C. v. Frost,* 422 Pa. Super. 36, 41, 618 A.2d 1003, 1006 (1993). (emphasis in original)

In this case, this court finds that the contract is an executory contract on the part of the parties. Plaintiff acted, *i.e.,* waived her marital rights via the contract itself. Defendant failed to execute his promises under the contract. The stock and real estate were supposed to be transferred "contemporaneously" but, in fact, were *never* transferred. Thus, plaintiff is authorized to rescind the postnuptial agreement. She has done so within a reasonable time since it was only after the parties' separation that she realized what had occurred. She took action immediately.

"The purpose of equitable rescission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction. *Fichera v. Gording,* 424 Pa. 404, 227 A.2d 642 (1967)." *Gilmore v. Northeast Dodge Co. Inc.,* 278 Pa. Super. 209, 216, 420 A.2d 504, 507 (1980). In this case, the parties' original position can only be established as if the contract had not existed. The contract must be rescinded.

## ORDER

And now, October 5, 2005, the court finds and orders that the postnuptial agreement dated July 20, 1995, is rescinded and is void.