J-A21019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GAYLE HUDSON | |
| Appellant | No. 224 EDA 2014 |

Appeal from the Judgment Entered January 6, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2012-001132

BEFORE: LAZARUS, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.: **FILED SEPTEMBER 24, 2014**

Gayle Hudson appeals from the judgment entered against her in the Court of Common Pleas of Delaware County on January 6, 2014 following a non-jury trial.[1] United Services Automobile Association (U.S.A.A.) filed a declaratory judgment action to determine its duty to provide underinsured motorist benefits to its insured, Hudson. U.S.A.A. claimed benefits were not required as Hudson was prevented from re-litigating the issue of damages under the doctrine of collateral estoppel. The trial court agreed with

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Pursuant to the civil docket supplied by the Court of Common Pleas of Delaware County, a verdict in favor of U.S.A.A. was entered on November 26, 2013. Hudson's motion for post-trial relief was denied on December 17, 2013 and judgment was entered by *praecipe* in favor of U.S.A.A. on January 6, 2014.

U.S.A.A. and entered judgment in its favor. In this timely appeal, Hudson argues the trial court's determination that collateral estoppel applied was against both the weight and sufficiency of the evidence. She further argues the trial court's determination that Hudson had been fully compensated in her prior UIM arbitration was against the weight of the evidence. After a thorough review of the submissions by the parties, certified record, and relevant law, we affirm.

We adopt the facts as related by the trial court in its Pa.R.A.P. 1925(a) Opinion, dated February 21, 2014, and authored by the Honorable Chad F. Kenney, Sr., President Judge.

> [Hudson] was a passenger in a vehicle involved in a motor vehicle accident on June 9, 2007 and sustained a rotator cuff injury to her left shoulder for which surgery was recommended. [Hudson] recovered the maximum $15,000 from the at-fault driver's liability insurance and proceeded to present a claim for UIM [underinsured motorist] coverage to Allstate Insurance Company, the insurance carrier that provided UIM coverage for the vehicle in which [Hudson] was a passenger. The Allstate policy carried UIM limits of $100,000. [Hudson's] UIM claim proceeded to arbitration and, on December 18, 2009, the arbitration panel rendered an award in favor [of Hudson], who was then the plaintiff, of $75,000. The award took into account the $15,000 for the at-fault driver's limits and, thus, provided a net award of $60,000 out of a potential $100,000. At the arbitration hearing, counsel for Allstate presented medical records which he had subpoenaed and the sworn statement of Gayle Hudson. (Testimony of Gerard Bradley, trial date November 8, 2013). The medical records noted the tear in [Hudson's] left shoulder and recommended surgery. (Letter dated January 15, 2008, marked as Plaintiff's Exhibit 2). In [Hudson's] sworn statement, she states that her left shoulder has a full tear and that the doctors told her it would definitely need to be operated on. (Sworn Statement of Gayle Hudson, marked as Plaintiff's Exhibit 1).

The Plaintiff, [U.S.A.A.], is [Hudson's] personal automobile insurance carrier.[2] On July 26, 2011, [U.S.A.A.] received notice from counsel for [Hudson] that [Hudson] was demanding UIM coverage from [U.S.A.A.] pursuant to her insurance policy. [Hudson's] demand was based on the fact that [Hudson] had undergone subsequent rotator cuff surgery and follow up physical therapy which [Hudson's] attorney contended created a value for her claim far in excess of the amount awarded by the arbitration panel from the Allstate policy.

Trial Court Opinion, 2/21/2014, at 2-3.

In response to Hudson's demand for UIM coverage, U.S.A.A. filed the underlying declaratory judgment action claiming Hudson was collaterally estopped from seeking further damages as she had a full and fair opportunity to litigate the issue of her damages in the UIM arbitration with Allstate. Motions for summary judgment were ultimately filed by both parties, and were denied. A non-jury trial was held before Judge Kenney, on November 8, 2013. After hearing testimony from counsel for Allstate who had participated in the prior UIM arbitration, and considering the submitted documentary evidence, the trial judge ruled in favor of U.S.A.A.

The relevant standard of review of a court's decision in a non-jury trial is as follows:

[We are] limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict

_____

[2] Pursuant to statute, the first priority of payment of UIM benefits was from the policy covering the vehicle in which Hudson was a passenger. Her policy with U.S.A.A. was second priority. *See* 75 Pa.C.S. § 1733(a)(1)-(2).

of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Croyle v. Dellape*, 832 A.2d 466, 470 (Pa. Super. 2003) (citing *Behar v. Frazier*, 724 A.2d 943, 946 (Pa. Super. 1999)). The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, "unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." *Fudula v. Keystone Wire & Iron Works, Inc.*, 283 Pa. Super. 502, 424 A.2d 921, 927 (1981).

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa. Super. 2000) (internal citations omitted). "To the extent that the trial court's findings are predicated on errors of law, we review the court's findings *de novo.*" *John B. Conomos, Inc., v. Sun Co., Inc. (R & M)*, 831 A.2d 696, 704 (Pa. Super. 2003), *appeal denied*, 577 Pa. 697, 845 A.2d 818 (2004).

*Hart v. Arnold*, 884 A.2d 316, 330-31 (Pa. Super. 2005).

Further,

"Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Balent v. City of Wilkes-Barre*, 542 Pa. 555, 669 A.2d 309, 313 (1995).

Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case;

(2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Catroppa v. Carlton*, 998 A.2d 643, 646 (Pa. Super. 2010) (citation omitted). Furthermore, "[t]he judgments of the federal courts are owed their due force and full effect in state courts." *In re Stevenson*, 615 Pa. 50, 40 A.3d 1212, 1222 (2012); *see also* *Atiyeh v. Bear*, 456 Pa. Super. 548, 690 A.2d 1245, 1249-50 (1997) (applying the collateral estoppel doctrine to a decision of bankruptcy courts, and precluding the relitigation of the same issue in this Court).

*Weissberger v. Myers*, 90 A.3d 730, 733-34 (Pa. Super. 2014).

With these standards in mind, we examine the trial court's determination that Hudson was collaterally estopped from re-litigating the issue of damages.[3]

Hudson's first two issues are related and we will address them together. Hudson argues the trial court's determination she was collaterally

_____

[3] Hudson's appeal only challenges the application of the first and fourth elements of collateral estoppel. Because there are no questions regarding the applicability of elements (2) existence of a final judgment, (3) identity of the party, or (5) determination that the prior proceeding was essential to the judgment, we will not discuss those.

estopped from pursuing additional damages was against both the sufficiency and weight of the evidence.[4]

Initially, we note that a claim that a judgment is against the weight of the evidence is a claim that certain evidence was not credible on its own or that otherwise credible evidence was overwhelmed by other credible evidence. "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). While a sufficiency claim argues a required element of proof is missing, the weight claim argues, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id*.

Assessing weight of the evidence is commonly stated in terms that the fact finder, in passing upon the credibility of witnesses and the weight of the evidence is free to believe all, part or none of the evidence. *See Commonwealth v. Phillips*, 93 A.3d 847 (Pa. 2014). A judgment is against the weight of the evidence if it is so contrary to the evidence as to shock one's sense of justice. *Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 274 (Pa. Super. 2014). Such determinations are the exclusive province

_____

[4] Hudson argues her issues in a different order in the body of her brief. We refer to the order of the issues as they were listed in the statement of questions involved. *See* Appellant's Brief at 5.

of the fact finder and will not be overturned absent a showing the trial court "acted capriciously or palpably abused its discretion." ***Hatwood v. Hospital of the University of Pennsylvania***, 55 A.3d 1229, 1238 (Pa. Super. 2012). Here, Hudson's argument regarding the weight of the evidence does not address credibility or the relative weight of the totality of the evidence. The argument as presented in the Appellant's brief is that "there was *no evidence introduced* at trial establishing that the issue of … damages related to her shoulder surgery was actually presented to the Allstate UIM Arbitration Panel and litigated." ***See*** Appellant's Brief at 30 (emphasis added). Accordingly, we read the argument as a restatement of the sufficiency claim. Therefore, the weight of the evidence argument has not been developed and the issue has been waived.[5] ***Piston v. Hughes***, 63 A.3d 440, 444 (Pa. Super. 2013) (undeveloped arguments are waived).

As to insufficiency of the evidence, Hudson argues she did not present any evidence of her shoulder surgery and resulting scarring, recovery, etc. to the arbitration panel; therefore, the issue was never litigated. Accordingly, she claims, collateral estoppel cannot apply. Hudson has framed this argument as a failure to meet the first requirement of collateral estoppel – the necessity that the issue to be decided be identical to the issue previously decided. However, the trial court determined the "issue" in

---

[5] Even so, our review of the certified record leads to the conclusion that the judgment is not against the weight of the evidence.

question was the broader concept of the damages suffered by Hudson because of the automobile accident. As a result, the trial court essentially reframed Hudson's argument in terms of the fourth requirement – a question of whether Hudson was afforded the opportunity to fully and fairly litigate the issue. *See* Trial Court Opinion at 6 ("[Hudson] had a full and fair opportunity to litigate the extent of her damages…"). We believe the trial court's approach was correct.

Rather, Hudson has claimed: "The issue of the damages related to the surgery entails a number of elements. These include the cost of the surgery, the actual scar from the surgery, months of post-operative therapy, lost wages, and pain and suffering." *See* Appellant's Brief at 30. This argument concerns the continuation of treatment, and concurrent claim of continuing damages, arising from a known injury. This is simply a claim for future damages. The argument is essentially an assertion that future damages are a different issue from damages.

However, other than Hudson's assertion, she has put forth no compelling argument why future damages should be considered separately from general damages. While past and future damages are likely to be

calculated differently, they are both elements of damages, not separate issues.[6]

The **issue** of Hudson's damages was clearly before the arbitration panel, which considered the evidence presented, including the doctor's opinion that surgery would be necessary[7] and Gerard Bradley's testimony that Hudson testified consistently with her sworn statement,[8] and determined her injuries were compensable to the total amount of $75,000.00. Therefore, Hudson cannot credibly claim that the general issue of damages was not presented to the prior arbitration panel, and we find no

_____

[6] In the context of collateral estoppel, past and future damages are no more a question of separate issues that is the question of physical injury and wage loss. One could not credibly argue one was entitled to separate arbitrations to determine physical injury and wage loss. The trial court aptly noted:

> The fact that [Hudson] decided to wait to undergo surgery at a time that was more convenient for her does not magically make the injury anything different than the one that was sustained in the motor vehicle accident and for which she was compensated by the arbitration panel. [Hudson] had not chosen surgery at the time of arbitration but it was clear at the arbitration that surgery was recommended and would most likely be necessary in the future – therefore, the panel took it into account.

Trial Court Opinion at 6.

[7] **See** Plaintiff's Exhibit 2, Letter from Dr. Trevlyn to Dr. Weiner, 1/15/2008. Dr. Trevlyn appears to have been Hudson's orthopedic specialist, and Dr. Weiner, her primary treating physician.

[8] Gerard Bradley was arbitration counsel for Allstate. Hudson's sworn statement included her admission that she believed her shoulder would require surgery. **See** N.T. Trial, 11/8/2013, at 11.

abuse of discretion or error of law in the trial court's determination that the first requirement of collateral estoppel, issue identity, had been met.

However, the trial court addressed future damages in terms of the fourth element of collateral estoppel, addressing the opportunity to fully and fairly litigate the claim, and Hudson's argument can be fairly read to encompass that concept. Therefore, despite not being labeled as a challenge to the sufficiency of the fourth element of collateral estoppel, we will address her claims in those terms.

The fourth requirement for application of collateral estoppel is whether the party was given the opportunity to fully and fairly litigate the issue. The salient word here is opportunity. The trial court found that the arbitration panel was presented with medical records, doctor's statements, treatment records, Hudson's statement that she believed she would need surgery, as well as the report from the defense medical examination. The certified record in this matter does not contain Hudson's medical or treatment records, so we cannot consider either of those.[9] However, we have Hudson's statement and Dr. Trevlyn's letter, both of which clearly indicate the injury to the shoulder and the recommendation of surgery. Hudson claimed then and claims now that those injuries were a result of the automobile accident.

_____

[9] Hudson has not specifically argued that the medical/treatment records do not include the shoulder injury. If Hudson believed those records supported her argument, it was incumbent on her to provide them.

She knew about the injuries then and related those injuries to the arbitration panelists.[10]

Further, at the non-jury trial, counsel for Hudson admitted that nothing prevented her from joining U.S.A.A. in the original arbitration.

> THE COURT: What would stop you from bringing that [secondary UIM coverage policy] to the table?

_____

[10] Hudson's reliance on **McNally v. Dagney**, 510 A.2d 722 (Pa. Super. 1986), to support this aspect of her claim is unavailing. In **McNally**, the plaintiff was injured in a car accident with a phantom vehicle. That claim was submitted to McNally's uninsured motorist (UM) carrier. Subsequent to that accident, McNally was involved in an accident with Dagney. While the UM claim was pending, McNally filed an action against Dagney, who subsequently sought dismissal of the action claiming McNally was collaterally estopped from seeking the same damages from two accidents. While the trial court agreed with Dagney, a panel of our court determined that collateral estoppel would prevent collecting duplicate damages, but that based on the record it was unclear to which accident McNally was ascribing the specific injuries. In footnote eight of the decision, it was noted that McNally claimed to have specifically limited the claim of damages

> "from the time of the accident to the day before accident two, one year, and about seven months later" and had "different injuries, continuing injuries [, and] lost wages that were not compensated by the first award."

**McNally**, 510 A.2d at 725, n. 8.

Initially, we agree with the general principle that collateral estoppel cannot prevent a party from claiming "new" damages. However, a significant difference between **McNally** and the instant matter is that in **McNally**, the claimant argued he had specifically limited the damages submitted in the first claim, while that argument has not been raised here.

- 11 -

> [Counsel]: One thing that might stop someone from bringing it is that they feel that the $100,000 adequately compensates the Plaintiff. So, there's no need to go any further than that. That based on the evidence or the injuries at the time of the hearing that's adequate in terms of compensation. Two, the hearing is scheduled and testimony was that it's recommended, but I don't really want to move forward with surgery, so we'll just present the case as recommended surgery. But I'm not going to have it.

N.T. Trial, 11/8/2013, at 42.

Counsel's comments indicate that any decision not to fully present the claim of damages was strategic or practical. Neither the arbitration panel nor defendant precluded Hudson from presenting such evidence.

We also examine the language of the relevant statute, 75 Pa.C.S. § 1733, addressing the priority of recovery. The statute reads, in relevant part:

> (a) General rule. – Where multiple policies apply, payment shall be made in the following order of priority:
>
> > (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
> >
> > (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

75 Pa.C.S. § 1733 (a) (1)-(2).[11]

To the extent that Hudson relies on this statute, the statute addresses only the order of payment; it does not explicitly allow for multiple

---

[11] We note this language is mirrored in the relevant insurance policies.

adjudications and serial determinations of the amount of damages suffered by the injured person.[12]

In light of the foregoing, we find no abuse of discretion or error of law in the trial court's determination that Hudson was afforded a full and fair opportunity to present her entire case for damages.[13]

_____

[12] Indeed, without that explicit allowance, the general policy of the Commonwealth of Pennsylvania frowns upon piecemeal litigation as being wasteful, expensive and as unnecessarily protracting litigation. **See generally**, **Pennsylvania Turnpike Commission v. Atlantic Richfield**, 394 A.2d 491 (Pa. 1978). While Section 1733 does not forbid serial litigation, we believe we should not unnecessarily encourage it. As noted, in the instant matter there was nothing preventing Hudson from fully presenting her claim for future damages or from joining U.S.A.A. in the original arbitration. Therefore, there is no particular reason to endorse serial litigation under the facts before us.

Prior to 2005, piecemeal litigation involving the alleged tortfeasor and UIM coverage was not only encouraged, it was virtually mandated by the Department of Insurance, which required insurance policies to provide for UIM arbitration. The third-party negligence matter would typically be brought before the Court of Common Pleas (including statutory arbitration as applicable) while the UIM claim was presented to a private arbitration panel. This mandatory separation of third party and UIM claims no longer exists. **See Insurance Federation of Pennsylvania, Inc. v. Koken**, 889 A.2d 550 (Pa. 2005).

[13] Hudson has also argued that the amount of the award, $75,000.00 is proof that she did not present her case for future surgery. Whether she did or did not present specific numbers for the cost of surgery and wage loss, etc., is immaterial to whether she had the opportunity to do so. In addition, the defense in the prior arbitration presented a medical report from a defense medical examination that opined the shoulder injury was not causally related to the accident. **See** Report of Dr. Stuart Gordon, M.D., 7/20/2009. Therefore, the amount of the award might also indicate the arbitration panel accepted the defense position regarding the shoulder injury.

In her final argument, Hudson claims the trial court erred in determining that the award of the prior arbitration panel, for less than the primary UIM policy limits, demonstrates that she was fully compensated for her damages. This claim is moot in light of the fact that Hudson has been properly precluded from further litigating the issue of damages. We agree with the proposition that had Hudson settled her claim against the primary UIM policy for $60,000, she would not be precluded from seeking further coverage from her own policy based on the failure to exhaust prior levels of coverage. *See Nationwide Ins. Co. v. Schneider*, 960 A.2d 442 (Pa. 2008). However, *Schneider* did not address the concurrent issue of collateral estoppel. Schneider settled the claim with the primary UIM carrier. Therefore, there was no prior adjudication determining the amount of damages.

Because collateral estoppel has prevented Hudson from seeking another determination of damages, the issue of exhaustion of the prior policy is moot. Accordingly, Hudson is not entitled to relief on this issue.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2014

- 14 -